(51 South. 98.)

No. 17,511.

BIONTO v. ILLINOIS CENT. R. CO.

(Jan. 3, 1910.)

*(Syllabus by the Court.)*

1. EVIDENCE (§ 126*) — DECLARATIONS — RES GESTÆ.

The deceased son of the plaintiff was struck by a train of the defendant and rendered unconscious for a period of time unascertained. When he recovered consciousness he told witnesses what he knew of the accident, and his statements were sought to be introduced at the trial as part of the res gestæ; but as his statements were not a part of the transaction, nor the immediate outcome of the act complained of, but was merely narrative of what he knew of the accident, they were properly excluded as not forming part of the act and not within the rule of res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 372–376; Dec. Dig. § 126.*]

2. DEATH (§ 62*)—DYING DECLARATIONS—ADMISSIBILITY.

Nor was the narrative of the event admissible as a dying declaration, for, while dying declarations were once admissible in England in civil cases, it is the well-settled rule of the present day that they are not admissible in civil suits. Stevens (2d Am. Ed.) 87.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 81; Dec. Dig. § 62;* Evidence, Cent. Dig. §§ 376, 1060.]

3. RAILROADS (§ 398*)—INJURY TO PERSON ON TRACK—EVIDENCE.

It was not shown that any of the train crew was negligent, the train was in good order and running at its usual rate of speed, and the failure to ring a bell when there was no need for it cannot be construed as negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. § 398.*]

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert S. Ellis, Judge.

Action by Peter Bionto against the Illinois Central Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

W. B. Kemp, H. W. Robinson, and Howell Carter, Jr., for appellant. Hunter C. Leake and Kemp & Spiller, for appellee.

BREAUX, C. J. This is an action for damages in the sum of $20,000 on account of the death of Marino, the young son of the plaintiff, Jeanne Bionto and Peter Bionto.

The deceased was not 21 years of age.

An engine and train of the defendant road ran over and mangled his body. This was on the 21st day of January, 1907, at twilight, between 5 and 6 o'clock.

He was sent to the Charity Hospital in New Orleans and on the following day died.

Plaintiffs charge gross negligence and criminal carelessness of the agents and employés of the defendant road in running the freight train by which the young man was killed.

The place where he was killed is at about the middle of a curve in the track.

The deceased was walking on the track on his way to Gullette. He was about a mile above Independence, walking toward Gullette.

There is an earth road about 150 yards from the railroad track running parallel with the track. It is fenced in from Independence to Amite. It is fenced in at the curve above mentioned. There are two tracks running parallel at about ten feet one from the other.

The train which struck the young man was on the north bound track going north.

The country is somewhat densely inhabited at and near this curve.

The young man, after he was struck down, lost consciousness. The length of time he was in that state is not known.

After recovering consciousness, he said that he thought he saw two negroes to whom he called out, but they ran away. Afterward the son of one of the neighbors came to him and immediately returned and informed his father and a neighbor of his father. They at once went to the wounded man and gave him all the relief they could. They testified as witnesses.

The testimony was, substantially: That the young man was entirely conscious when they came to him. That, though very much mangled, he did not seem to suffer very much. It was only later that he felt excruciating pains. He talked freely, and said: That he knew he could not live. He stated to these witnesses that he was walking up the road in haste on his way to his home in Gullette; that he did not hear the train, nor any bell, nor any warning; that he did not suspect at the time that the train was advancing on him.

The testimony regarding his utterances at that time show an affection for his mother. We cannot refrain from mentioning it. At that solemn moment, facing death, he gave little thought to himself; did not refer to his condition specially, but spoke of his mother and asked to be taken to her; said that she was sick. From the testimony, we infer that he was more concerned about her than he was about his own sad, approaching end.

In talking about what occurred, he spoke with deliberation.

When the plaintiff offered to prove the statement of the witnesses as to what the deceased said at the time before mentioned, the defendant objected, and urged that it was not admissible either as a dying declaration or as part of the res gestæ.

The judge of the district court sustained the objection, but allowed the testimony to be taken down and to be brought up on appeal in order to place before us the testimony given, and thereby place us fully in possession of the testimony and the objection in order that we might the better consider and decide the point raised.

We take up in the first place the objection that it was not admissible if offered as a dying declaration.

1. Dying Declaration.

In deciding the question now before us, we follow for the moment the method of reasoning known as the historical method; that is, the method which traces jurisprudence back for a considerable time. There is a note in the American and English Encyclopedia of Law (volume 10, p. 370) mentioning that years ago in England it was held that dying declarations were admissible in civil cases. It is evident, from the statement which follows the above in this note, the desuetude of the rule has resulted in its abrogation. It was never fully established, although there are utterances in the earliest decisions recognizing the rule.

Cyc. vol. 21, 981, another work, does not refer to the earliest decisions in England. The compiler contented himself by announcing that dying declarations are never admissible in civil cases. The text is support-

ed by citations from courts of last resort in a number of jurisdictions.

In Greenleaf it is stated that it was at one time held that such declarations were admissible in all cases, but that since it has been settled by repeated decisions that dying declarations are inadmissible in civil actions. Stevens (2d Am. Ed.) 87.

In a note on the same page as the one cited above, it is said that such evidence is not received in civil actions nor in actions for injury causing death.

2. Res Gestæ.

The statement of the deceased was not the immediate outcome of the facts, nor was it contemporaneous, nor did it succeed the facts under circumstances rendering the words uttered part of the transaction; to use a word sometimes used in defining res gestæ. It was a narrative.

It is well settled that narrative of facts will not be admitted. It did not have the probative force of a statement directly connected with the facts.

There is no evidence of negligence. The plaintiffs inferred that there was negligence on the part of defendant because the engineer had many duties devolving upon him that rendered it difficult for him to keep such a lookout in front as was needed for running a train safely.

His duties, we take it, were those of engineers generally. He was assisted by a fireman.

When the engineer is away, it is the duty of the fireman to watch in front.

If it had been shown that the defendant, through either or both of these employés, had been negligent, it would be different. The case would present a different appearance.

So far as we are informed, the train was in good condition, and the employés were at their respective places, and the train was running at its usual rate of speed.

Something was said on the trial about the failure to ring the bell.

As the deceased was not seen at all, and as there is nothing showing that there was need for ringing the bell, we cannot look upon this incident of the said accident as ground for setting aside the judgment of the district court.

Lastly, at the instance of plaintiff, a writ of subpœna duces tecum was issued to W. M. Freeman, local agent of the Illinois Central, to produce in open court the train register at Amite, for the date of January 20, 1909, so as to show that no train went south at any time on that date so as to be able to pass the train which injured plaintiff's son at the point of injury.

The writ was issued on the 17th of that month. Upon the return and sworn statement of the witness that he could not find the train register, it was not produced.

While it should have been produced, if at all possible, it does not appear that the plaintiffs were prejudiced in their cause.

The district court, doubtless, gave to this case careful attention. There are features about it which have a decidedly prompting influence to let nothing favorable to plaintiffs escape attention.

We have considered the cause carefully and have found no error in the judgment.

For reasons assigned, the judgment of the district court is affirmed.