(80 South. 217)

No. 21898.

BISHOP et al. v. TOWN OF MANSFIELD
et al.

(Dec. 2, 1918.)

*(Syllabus by the Court.)*

1. EVIDENCE ⬤⇒317(18)—STATEMENT BY IN-
SURED PERSON AS TO MANNER OF INJURY.

Statements, made by a person injured con-
cerning the manner of his injury, which were
not part of the res gestæ, are inadmissible in
evidence, when coming from those to whom they
were made, in an action for the damages result-
ing from such injury, brought by the brothers
and sisters of the person injured after his
death.

2. DEATH ⬤⇒76—EVIDENCE.

Circumstantial evidence which shows mere-
ly a probability that an accident, which no liv-
ing person witnessed, happened as alleged in a
petition claiming damages for injuries to a per-
son deceased, is an insufficient basis upon which
to rest the judgment prayed for.

Appeal from Twelfth Judicial District
Court, Parish of De Soto; John H. Boone,
Judge.

Suit by R. M. Bishop and others against
the Town of Mansfield and others. From a
judgment rejecting their demand, plaintiffs
appeal. Affirmed.

F. S. Craig and C. B. Huson, both of Mans-
field, for appellants.

Elmo P. Lee, of Mansfield, for appellees.

### Statement of the Case.

MONROE, C. J. Plaintiffs, who are the
brothers and sisters of Will. L. Bishop, de-
ceased, prosecute this appeal from a judg-
ment rejecting their demand for damages for
personal injuries alleged to have been sus-
tained by the decedent, and to which they
attribute his death, and to have been sus-
tained by them in consequence of his death,
which injuries they aver were caused by
the fault of the defendants, the town of
Mansfield and Bash & Grey, contractors, in
leaving in a dangerous condition a certain
trench, running through one of the streets
of the town, in which, under contract with
the town, Bash & Grey had laid the pipes
required for a water and sewerage system,
and which trench they had neglected, after
filling, so that a crust had formed upon the
top of the filling, through which a horse,
ridden by the decedent, is said to have bro-
ken, and fallen, thereby inflicting the inju-
ries of which plaintiffs complain.

It appears from the evidence that decedent
was employed by B. Y. Wemple as overseer
on a plantation lying some five miles to the
westward of Mansfield, but that he spent
his nights at the residence of his employer,
in the town, going to the plantation in the
mornings and returning in the evenings.
The witnesses are rather uncertain as to the
date of the occurrence; thus Mr. Wemple
says, in his testimony:

"I think it was the first of the year that he
got hurt; I think it was the 1st of January.
* * * I think it was about the middle of the
week, maybe Thursday or Friday; I went out
there the next day. * * * I think he began
[working for witness] Monday morning; what
day of the week that was I don't know; it was
the first of the week; he only worked at the
place one week, six days; he began Monday
morning; he came up on Sunday afternoon, and
went out with me on Monday morning, before
he got hurt; what day he got hurt I am not
sure."

Further testifying, the witness says that
on the morning of the accident decedent left
the house before he (witness) was up, pre-
sumably, to go to the plantation on horse-
back; that his most direct route was through
Gibbs street, where the trench was; that
some hours later witness started to the plan-
tation by that route; that, on his way, he
came to a place where the crust upon the
ridge of earth which crowned the trench
appeared to have been broken through, as if
by a horse, and as if the horse had fallen,
the hollow between the under surface of the

crust and the earth beneath being something like four feet deep, and it occurred to him that perhaps decedent's horse had fallen; that, when he reached the plantation, he found the horse covered with mud, as was also the clothing, or overcoat, worn by decedent, and, asking decedent if they had fallen in the ditch, was told that they had, and that he (decedent) had been hurt in the stomach (to which it was objected that the testimony was hearsay, and not res gestæ, and the objection was sustained). Mr. Smith, decedent's brother-in-law, and husband, as we take it, of one of the plaintiffs in the case, testifies that he saw decedent on the day of the alleged accident in the town sitting down, and that he was muddy, told witness about the accident, and showed him the place where it occurred, all of which must have happened late in the day. The only testimony other than that of Mr. Wemple upon the question of the day or date of the accident is that given by Dr. Hewitt, who says that decedent called on him on the day of the accident, "in the morning some time," from which we infer that it was near midday, when decedent may have come in for his dinner, as the accident is supposed to have occurred before daylight, and if the call had been made at that time, the doctor would probably have mentioned it; that he said his horse had fallen on him; that he examined decedent and found a bruise on his stomach, but did not then think it very serious. Being asked whether he saw him afterwards, the witness answered, "I think it was, I believe; as I remember, that was Saturday morning, and I was called to see him the next Sunday, the next day, 48 hours later." He then found that the liver and spleen of the decedent were very much enlarged. He was asked, "This enlargement of the liver and spleen, was that a result of this fall?" to which he replied, "Yes, sir; the reason I believe it is, some several days before that, he came into my office and I

made an examination; I naturally look after my patients as well as I can; and the enlargement of the liver and spleen, etc., I believe was caused by the fall." He does not say that, when decedent called at his office, he made an examination for the purpose of finding out whether there was then an enlargement of the liver and spleen. He otherwise testifies that he had treated decedent for a well-known disease some three years before, but had learned that he had afterwards been subjected to the "Wasserman test," with a negative result, and assumed that he was cured; that decedent was, however, suffering at the time of the accident with malaria, and had been treated by witness for that disease several times during the preceding year, and that the malaria brought about an anæmic condition, but that, in his opinion, decedent would have recovered but for his fall, which aggravated his disease. Dr. Parsons, who was in charge of the sanitarium to which decedent was sent, testified that he died of anæmia, and that the disease might have been aggravated by a fall; that enlargement of the liver and spleen may result from malaria, and also from a traumatic injury. No witness was called who saw the accident, and the testimony of those who heard of it from the decedent was objected to as hearsay, and not of the res gestæ, and the objection was sustained. Putting together the testimony of Mr. Wemple and Dr. Hewitt, we conclude that the accident may have occurred on Thursday or Friday (January 7th or 8th), and it appears that decedent took to his bed on Saturday night (having attended to his duties during the interval, including the day of the accident), and died early in March.

## Opinion.

[1, 2] We are of opinion that the objection to the testimony of Messrs. Wemple, Smith, and Hewitt, based upon the statements of

the decedent, was well founded and properly sustained, since the statements formed no part of the res gestæ, and, coming from the witnesses, were mere hearsay. Marler v. Texas & Pacific R. Co., 52 La. Ann. 727, 27 South. 176; Bionto v. Ill. Cent. R. Co., 125 La. 147, 51 South. 98, 27 L. R. A. (N. S.) 1030; 16 Cyc. 1162. Without that testimony, we have nothing but the facts, that on a particular day a hole, into which a horse may have fallen, was found broken through the crusted surface of the covering of a badly cared for trench, in a town street through which decedent may have been riding, and that the deceased and his horse were found some hours later covered with mud, and apparently suffering from recent injury. Those facts, no doubt, suggest the idea that it was the deceased and his horse by whom and which the hole was broken through, but there are other ways of accounting for the hole, and other places and other ways where, and whereby, deceased and his horse may have collected their mud and sustained their injuries. To make it merely probable that those things happened as alleged in the petition is an insufficient warrant for a judgment awarding damages.

The judgment appealed from is therefore Affirmed.