DAWKINS, J.
Plaintiffs claim to be the owners of 20 acres of land, described as beginning at the southwest corner of the northwest quarter of section 27, township 12 north, range 11 west, and running thence north 20 chains, thence east 20 chains, thence south 45 degrees west to place of. beginning, situated in the parish of De Soto. They allege that defendants are claiming to be the owners thereof as the heirs of L. H. Bell, Sr., under and by virtue of a tax deed made to him by the tax collector of said parish dated May 21, 1910, and recorded in Conveyance Book 25, p. 488, of the records of De Soto parish; that the said pretended deed is null and void or should be annulled and set aside for the reason that petitioners had paid the taxes, costs, penalties, and accrued interest promptly within the year of the sale — that is to say, on June 10, 1910, but that the said Bell had failed to deed the same back to petitioners or to cancel said tax deed as he was in duty bound to do. Further, that defendants had executed a mineral lease upon saidi property to other persons, and for the reasons stated-the same should be annulled and set aside.
Plaintiffs prayed that they be decreed the owners of the property in question; that the said tax deed be decreed a nullity, or, in the alternative, that it be annulled, and that the defendants, including the lessee under the 'mineral lease, be declared to be without interest in said property, and that both said inscriptions be ordered canceled and erased from the records of said parish.
Defendants admitted the purchase by their ancestor of the property, but denied that it *1098 had ever been redeemed as claimed by plaintiffs. '
There was judgment for defendants, and plaintiffs appeal.
Opinion.
The important issue in this case is one of fact, that is, whether -or not the tax purchaser ever received the money for the redemption of the property within the year allowed by law.
The proof offered by plaintiff to establish that fact consists of a carbon copy of a letter' by Paul Lisso, now deceased, one of the co-owners of the property at the date of the tax sale (whose heirs are plaintiffs herein), addressed to W. W. Williams, deputy sheriff of De Soto parish at that time, acknowledging receipt of one from the said Williams of date April 30, 1910, in regard to taxes due upon two quarter sections, situated in another township. In this letter, dated June 1, 1910, Lisso requested that he be furnished with the statement of the amouht due with penalties. • There' was also offered . in evidence canceled check or draft by Lisso in favor of said “W. W. Williams, Tax Collector,” for $19.48, dated June 9, 1910, which had been marked “Paid,” and bore the indorsement of the Bank of Commerce in Mansfield, De Soto parish, of date June 10, 1910, indicating that it had either been deposited or cashed by Williams or some one to whom he had indorsed it in blank.
At the time of the trial below in September, 1920, Bell, the tax purchaser, had also died. Williams had absolutely no recollection of. receiving the check or the disposition made of it or its proceeds, though his belief was that if it was intended for the purpose of redeeming the property he must have used it in that way. The integrity and standing of both Bell, the deceased, and Williams, is admitted to have been good. However, the amount of the check, $19.48, does not correspond with the sum which would have been necessary to redeem the property. The price of the tax sale was $12.70, and this sum plus the 20 per cent, allowed the purchaser upon redemption would vnot have equaled the amount of the check. Williams made an examination of bank déposit slips of both the sheriff’s office and of his personal account over the period covering June, 1910, and could find no record of it at all, and on examination as a witness he testified in part as follows:
“Q. Now, since it was not deposited to your individual account or to the sheriff’s account or the tax collection account, what would you say became of this $19.48 which you collected?
“A. As I have stated, I have no recollection of this transaction and didn’t know anything about it until this draft was presented to me with my indorsement thereon.
“Q. But you collected this money?
“A. Yes, sir; evidently I did.
“Q. Now, what would you say you did with this money?
“A. I would not attempt to say.
“Q. Would you say you got the money?
“A. I evidently did.
“Q. Would you say you kept the money?
“A. I wouldn’t say, because my recollection is not such as would admit it, or permit it.
“Q. If this was sent to you by Mr. Lisso to be paid to Mr. Bell, do you think you paid it to him? i
“A. I would first have to be Satisfied that Mr. Lisso made that request of me. tI certainly would have endeavored to have complied with this request or return it to him. If I could not have complied within, this request I would have either returned the check or sent him our check. I wouldn’t say what I did in this case because I absolutely do not know. s¡5 & sjs })
Cross-Examination:
“Q. Were you rather intimately acquainted with Mí. L. H. Bell,-Sr.?
“A. Yes, sir.
“Q. Ask you if it isn’t a fact, to your own knowledge, that Mr. Bell claimed this land under tax purchase until his death?
“A. Yes, sir. He did. At least, I heard him speak of land in that section. As far as specifying the land by correct legal description, I don’t know that I could say that he .referred to it in that way.
*1100 “Q. You knew he was referring to land he purchased at tax' sale?
“A. I would judge so from his description, Mr. Lee.
Redirect Evidence:
“Q. Have you figured out this nineteen dollars and forty-eight cents to see whether this just about covers the taxes, cost, and 20 per cent, on top of that?
“A. The day I figured it in Mr. Parsons’ office was the only time. It figures in the neighborhood of the amount that should have shown was due for the redemption of that property. That was the only time I figured it. It was the day we were all over there in Mr. Jim’s office together.
Recross-examination:
“Q. You ever recall paying Mr. Bell that money?
“A. No, sir; I do not.
“Q. Could you find the original letter in which that cheek was sent to you?
“A. That is the only document I could find.
“Q. That don’t refer to this particular tract of land?
“A. No, sir; that is a copy of a letter.”
It was shown that Bell claimed to own the property np to the time of his death.
The property in contest does not appear to have been assessed to him from 1910 to 1919; but it was assessed to plaintiffs.
This is in substance the proof offered to show that. Bell received the money to redeem the property; but it falls short of that end. Of course, it was the best and perhaps only evidence which the plaintiffs could produce; yet the case was not made out with that degree of certainty required by the law. Bishop v. Town of Mansfield, 144 La. 109, 80 South. 217.
Even granting that the money necessary to redeem the property was paid into the hands of the tax collector, this was not sufficient under the law., JBell lived in the parish and could easily have been found. The money could only have been left with the sheriff if he had refused it. There is no pretension that this course was pursued. Prater v. Craighead, 118 La. 639, 43 South. 258;. Frisco Land Co. v. Nevins, 129 La. 965, 57 South. 284.
For the reasons assigned, the judgment appealed from is affirmed, with costs.