No. 3682

Second Circuit

YOUNGBLOOD v. COLFAX MOTOR CO., INC.

(January 31, 1930. Opinion and Decree.)

Ped C. Kay, of DeRidder, and Cline, Plauche & Girod, of Lake Charles, attorneys for plaintiff, appellant.

John A. & R. B. Williams, of Colfax, attorneys for defendant, appellee.

DREW, J. Plaintiff, Mrs. Pearl Youngblood, individually and on behalf of her minor children, Charles H., Winston S., Harold C., and Clyde L. Youngblood, instituted this suit against the Colfax Motor Company, Inc., for compensation for the death of their husband and father, Herbert S. Youngblood, alleging that the deceased, on or about the 2nd day of January, 1929, while engaged in taking an inventory for defendant, and while in the act of handling automobile parts, a piece of steel, glass, or other object stuck into one of his fingers, as a result of which the said finger became infected, causing nephritis, from which disease he died on February 8, 1929. They allege the business and occupation of the defendant on the dates above mentioned was "hazardous" under the express provisions of the Employers' Liability Act of Louisiana; that prior to and on or about January 2, 1929, the deceased was in the employ of said defendant in connection with its said business and occupation as hereinabove set out, his duties consisting of the general management and supervision of said business, and in connection with which duties he was required to, and did in fact, drive, operate, and sell automobiles and other vehicles, sell automobile parts, gasoline, motor oil, and other automobile accessories and assist in the taking of inventories. They allege his weekly earning to have been $34.56 per week, and pray for judgment in the sum of $6,000, payable at the rate of $20 per week from January 5, 1929, until paid, and for $250 burial expenses and doctor's bills.

The defendant filed an exception of no cause of action, which was overruled, and it then answered, setting up a general denial to all essential allegations of plaintiff's petition.

Defendant urges the exception of no cause of action, for the reason that it is not set out that defendant was, at the time of the accident. engaged in a "hazardous" occupation within the terms of the Employers' Liability Act of Louisiana. For the purpose of said exception, the allegations of plaintiff's petition must be taken as true, and in paragraph 7 of the petition it is alleged:

"That prior to and on or about January 2nd, 1929, the said Herbert S. Youngblood, husband of your petitioner, was in the employ of said Colfax Motor Company, Inc., in connection with its said business and occupation, as hereinabove set out, his duties consisting of the general management and supervision of said business, and in connection with which duties he was required to and did, in fact, drive, operate and sell automobiles and other motor vehicles; sell automobile parts, gasoline, motor oil, and other automobile accessories, and assist in the taking of inventories."

A service station handling gasoline is "hazardous," within the terms of the Employers' Liability Act of Louisiana. Smith vs. Marine Oil Co., 10 La. App. 674, 121 So. 782.

One driving, selling, and delivering motor vehicles is engaged in the operation of "engines" and "other forms of machinery," within the terms of the Employers' Liability Act. Haddad vs. Commercial Motor Truck Co., 146 La. 897, 84 So. 197, 9 A. L. R. 1380.

One whose duties are partly hazardous and partly nonhazardous, even though injured while performing duties that are nonhazardous, is entitled to compensation under the Employers' Liability Act. Byas vs. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303.

There is no merit in the exception of no cause of action, and the lower court properly overruled the same.

## MERITS

There are two questions presented for determination in this case:

1. Did the deceased receive an injury to his finger in the manner alleged?

2. If he did receive the injury as alleged, did that injury actually cause or contribute to his death?

For proof that the injury happened as alleged, plaintiff relies entirely upon the testimony of witnesses who relate what deceased told them. She offered the testimony of Dr. S. T. Roberts, who says that the deceased told him how the injury was received, and says that this conversation took place on the 12th of January, 1929. Dr. Earl Jones testified that the deceased told him on January 2, 1929, how the injury was received. Both doctors testify that he was relating the history of the case to them at the time he was calling on them for treatment.

Plaintiff also offered the testimony of J. E. Frusha, a brother-in-law of the deceased, O. B. Youngblood and C. L. Youngblood, brothers of the deceased, Hiram Lyles, a brother-in-law, and Mrs. Pearl Youngblood, widow of the deceased, and M. H. Rogers, a traveling companion of the deceased, all of whom testify that the deceased told

them how the injury was received, but not until several days, and in some instances a week, after the injury had been received. Plaintiff offered no evidence of any person who witnessed the accident, and is relying solely on the testimony of the above-named witnesses.

Defendant objected to this testimony for the reason that it was hearsay, and the judge of the lower court allowed the evidence, reserving the right to pass upon its admissibility in the final determination of the case. Just what his ruling was, as to the admissibility of this evidence, is not in the record, and whether he considered it or not, in arriving at his decision, we are unable to say.

Plaintiff urges the admissibility of this evidence, citing paragraph 4, section 18, of Act No. 20 of 1914:

"The judge shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure other than as herein provided."

in support of her contention; but we are sure this paragraph is not authority for the admission of rank hearsay testimony that is not part of the res gastæ in so far as it applies to witnesses other than the attending physicians.

In the case of Hicks vs. Meridian Lumber Co., 152 La. 975, 94 So. 903, the court held that statements made by a deceased to a person who was not a physician was inadmissible testimony.

In Bionto vs. Illinois Central Railroad Co., 125 La. 147, 51 So. 98, 27 L. R. A. (N. S.) 1030, the court held:

"The deceased son of the plaintiff was struck by a train of the defendant and rendered unconscious for a period of time unascertained. When he recovered consciousness he told witnesses what he knew of the accident, and his statements were sought to be introduced at the trial as part of the res gestæ; but as his statements were not a part of the transaction, nor the immediate outcome of the act complained of, but was merely narrative of what he knew of the accident, they were properly excluded as not forming part of the act and not within the rule of res gestæ."

In Bishop et al. vs. Town of Mansfield et al., 144 La. 110, 80 So. 217, the court said:

"Statements, made by a person injured concerning the manner of his injury, which were not part of the res gestæ, are inadmissible in evidence, when coming from those to whom they were made, in an action for the damages resulting from such injury, brought by the brothers and sisters of the person injured after his death."

The testimony of the witnesses, other than the two doctors, Jones and Roberts, wherein they related what the deceased had told them about the manner in which he had received the injury, is clearly inadmissible.

There is some authority for the admission of physicians' testimony, wherein they testify to what the deceased narrated to them in giving a history of the injury received for the purpose of receiving treatment, in cases where there were no eyewitnesses to the accident, and these authorities are based on sound reasoning. However, in this case, if we consider the testimony of Dr. Jones and Dr. Roberts as admissible testimony, the plaintiff has

still failed to make out her case against the defendant.

Dr. Roberts testified that when he was called to see the deceased, on January 12th, his finger was lacerated, about a third of the tip of the finger. Dr. Jones testified that when the deceased came to him for treatment on the 2nd of January, there was no laceration.

Plaintiff claims that the injury was received while the deceased was taking an inventory, and the evidence is conclusive that the taking of the inventory was begun on the 27th of December and ended on the 28th of December.

Deceased's widow testified that when he came home for Christmas, which was before the inventory was taken, his finger was injured and was wrapped up.

Red Richards testified that the deceased had his finger wrapped up while taking the inventory. Mrs. L. B. Dean testified that deceased's finger was injured before the taking of the inventory. J. L. Clark testified that the finger was injured before the deceased began taking the inventory; and J. W. Duncan, Mrs. J. W. Duncan, and their son, W. T. Duncan, all of whom lived in the same house with the deceased, at least he boarded with the Duncans, testified that the deceased had his finger wrapped up and was complaining of the finger hurting him before he went home for Christmas, and a week or more before he began taking the inventory. The uncontradicted evidence is that before he would start taking the inventory he remarked that his finger was bothering him and that he left defendant's place of business and went to the doctor's office and had the finger dressed and wrapped up for the purpose of keeping dust from getting in it.

Dr. Roberts testified that on the 12th of January the deceased gave him the following history of the case: "That he was taking stock in automobile parts and stuck something in his finger while handling stuff on the shelf. And that ne went to the doctor and the doctor tried to find something in his finger, but failed to find it." The testimony of six or eight other witnesses is that his finger was not hurt while taking stock for defendant.

Dr. Jones testified as follows: "Well, when he came in, I don't remember what finger it was, but I think it was the middle finger on the right hand, and when you looked over it you didn't see anything, but when you passed your finger over it he jumps. When I looked with a magnifying glass I could see a little hole which looked like a very small object had been in there, and I asked him if he had picked out anything, and he said he had not; that the only evidence he had something in there was when he passed his finger over it he felt pain. I couldn't see anything with the magnifying glass, and the next thing was to look for a cause. If you have some idea of what a man has stuck in his finger you have a better idea of what is wrong, and that is when he told me. He told me that he had been taking an inventory, and he said that it may be a sliver of steel wool, it might be a little piece of glass, or it could have been something that happened over at Mrs. Duncan's. Anyway, he included a rosebush, and that is what is left out of the affidavit."

Dr. Jones further testified that, in his opinion, from his examination of the injured finger, the injury was not caused

by a piece of glass, nor by a piece of steel wool, and that he thought of a thorn, for the reason that a thorn will poison the flesh, as there is a secretion of poison on the tip of a thorn; that neither glass nor wire would give as much pain as the injury was causing the deceased.

There is uncontradicted evidence in the record that there was no steel wool in the department in which the deceased helped to take the inventory, and that there are a number of rosebushes at Mrs. Duncan's where he was living.

Counsel for plaintiff asked Dr. Jones the following question:

"Didn't he (the deceased) state that possibly it (the injury) was gotten up in Mrs. Duncan's yard, that he didn't know where?"

And the witness answered:

"Yes, sir."

The plaintiff must make out her case with a preponderance of the evidence, and in this she has failed. It would take a wide stretch of imagination for the court to say that the deceased was injured while taking the inventory for defendant, for the overwhelming evidence is against it.

Having decided the first question in the negative it is unnecessary to pass on the second question.

The district court rejected plaintiff's demands. We find no error in that judgment.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed. Appellant to pay the cost of the appeal.