This is a suit for damages claimed by plaintiff, Mrs. Clara Bell Ingram, as the result of the death of her husband, Philip Graham Ingram, allegedly caused by being struck by an automobile owned by the Woodley Petroleum Company and driven by its president, John Woodley, both of whom are made defendants herein, together with their liability insurer.
The accident which is the basis of this suit occurred about noon on May 1, 1946, at the intersection of Wilkinson Street and Fairfield Avenue, one of the principal residential sections of the City of Shreveport, Louisiana. At the time plaintiff's husband, the decedent, a pedestrian, was crossing Fairfield Avenue from east to west along the extended south sidewalk line of Wilkinson Street, a recognized, established and authorized pedestrian crossing. The defendant, Woodley, was driving his Buick Sedan south on Fairfield Avenue, a right-of-way street, proceeding well within the legally established speed limit, his exact speed being about or slightly less than thirty miles per hour. After negotiating about half the width of Fairfield Avenue, according to the testimony of defendant, the decedent came to a complete stop, looked directly at, and, so far as defendant could tell, observed the approach of decedent's car, then some forty feet distant. Whereupon defendant, who was proceeding *Page 424 
on the right-hand side of the street some two or three feet west of the center line of Fairfield Avenue, continued on his course. Without warning, as the automobile came abreast of his position, decedent, in some manner not satisfactorily established, stepped or fell against the car, striking the left side of the windshield thereof. Defendant, Woodley, immediately applied his brakes and brought the car to a stop within a distance of some ten or twelve feet. The body of the decedent appeared to hang for an instant upon the cowl of the car from whence it slipped to the pavement of the street, coming to rest some two or three feet behind the left rear wheel, the body extending diagonally in a southeasterly direction. Defendant, Woodley, stepped out of his car and turned Ingram's body from a position on the left side until he was resting on his back. He then called to a negro yardman standing on the sidewalk at the northwest corner of the intersection, whose attention had been drawn by the sound of the impact of the body against the car although he did not actually observe the accident, to watch the body of the victim while he ran across the street to telephone for an ambulance.
As Woodley was crossing the street an automobile, proceeding east on Wilkinson Street, came to the legally required stop at the intersection of Fairfield. The driver, Aycock by name, inquired of the negro as to what had happened, was informed that there had been an accident, after which he turned to the right, south into Fairfield, and inadvertently ran over the body of the unfortunate Ingram. Apprised of this fact by the shout of the negro, Aycock parked his car at the right-hand curb of Fairfield Avenue, and returned to the scene of the accident. Meanwhile, still another party arrived at the scene and, finding that the ambulance had not been called, proceeded to telephone for this aid. The ambulance arrived some fifteen minutes or more later and removed Ingram to the Schumpert Sanitarium, where he died about 5:00 o'clock the same afternoon.
In general the principal facts as above outlined have been conclusively established, but sharp and irreconcilable conflicts have arisen with particular reference to the exact cause of the first accident upon which, of course, must rest the ultimate conclusion as to the negligence vel non of the defendant, Woodley, and the contributory negligence of the defendant.
After trial on the merits there was judgment in favor of plaintiff, from which judgment defendants have appealed.
Numerous objections to the judgment of the trial court have been urged by the defendants, principal among which may be noted the contentions as to the failure to establish Ingram's death, failure to prove the cause of death; failure to establish negligence on the part of defendant, Woodley, and, conversely, proof of contributory negligence of the decedent to such extent as would bar recovery. We proceed to a discussion of such of these contentions as we feel necessary to a determination of this cause.
[1] While it is true that no attempt was made to prove the death of Ingram by the customarily accepted formal methods, we find that the fact of death has been sufficiently well established to dispose of defendants' objection on this ground. Plaintiff testified, somewhat casually and indirectly, as to the loss of her husband; statements of bills for funeral services were introduced and filed in evidence; the testimony of several witnesses, admitted without objection, unquestionably bears out the fact of death.
Defendants' objection to the judgment below on the ground that there is no evidence as to the cause of the decedent's death presents a much more important point, one which we have found sufficiently serious and tenable as to prove determinative of the case.
[2] There can be no question but that the burden of proof was upon plaintiff in the instant case, as against these defendants, to allege and prove the fact that decedent came to his death as the direct result of the alleged negligent acts of the defendant, Woodley.
Referring to plaintiff's petition we find that the requisite allegations were made setting forth the circumstances of negligence on the part of defendant, and the *Page 425 
death of the decedent as the result thereof. With respect to the injuries of decedent as the direct and proximate result of the accident, Article 7 1/2 of plaintiff's petition reads as follows:
"That as a result of the said husband of petitioner being thus struck by said the Buick Sedan automobile being driven by the said John Woodley at or near said intersection in the City of Shreveport, Louisiana, the body of the said husband, Philip Graham Ingram, was thrown high into or about the left windshield glass of the said automobile and soon fell to the pavement of said Fairfield Avenue about the central part of the said pavement, the blows from said automobile aforesaid and the said fall having fractured the skull, injured the brain and other parts of the body of the said Philip Graham Ingram, caused him to die at about five (5) o'clock, P. M., May 1, 1946, the same day he was struck."
In addition to the above allegation, plaintiff alleged in Article 10 of her petition that decedent, despite his 74 years of age was healthy and strong at the time of his death, and in Article 17 that the decedent sustained and endured great physical and mental pain from the time of the accident to within a few moments of his death. This allegation of physical and mental suffering is made an item of damages for which the sum of $1000 is claimed in Article 21 of plaintiff's petition.
It thus becomes obvious that there is no lack of proper and sufficient allegations in plaintiff's petition to serve as the foundation for proof with respect to this vital matter. But, after careful examination and re-examination of the record, we are amazed to find that there is not one scintilla of evidence to be found therein bearing upon the nature or character of the injuries received by the decedent or connecting such injuries with the fact of the striking of decedent by the automobile of the defendant, Woodley.
There is nothing in the record which would either explain or excuse this failure to produce what we regard as essential proof of a vital fact. There is evidence indicating that a police report was made and that a coroner's inquest was held, but aside from these mere facts and the further development of the feature of the coroner's inquest only with reference to the testimony of the defendant, Woodley, no attempt was made to produce them or such part of them as would have a bearing upon the establishment of the cause of the death of decedent. There is no testimony by any physician or sanitarium attendant, nor by anyone who observed the body, as to the character, appearance and nature of the injuries alleged to have been received by the decedent. Despite the allegations of a fractured skull, brain and bodily injuries, as made in the above quoted article of plaintiff's petition, there is not one word of testimony in the record on this point.
While it may be conceded that under certain undisputed facts a conclusion of death as the result of injuries received in a collision, or as the result of an impact of established violence and force, might be justified, the facts of this case do not by any means warrant such a conclusion. And, it must be remembered that aside from the facts in connection with the original collision with defendant Woodley's car the matter is complicated by the fact, which was established beyond any question of doubt, that the decedent was run over by a second automobile. It is earnestly argued by plaintiff's able counsel, that this injury was not of such force and effect as to cause or contribute to the cause of death. But, in the final analysis, this is purely argumentative. The testimony is conflicting as to what portion of the body of decedent was passed over by at least one wheel of the second automobile, and this point could have been cleared up with such certainty by competent medical testimony that failure to do so must in itself represent a circumstance which detracts to the point of destroying this contention on the part of plaintiff.
We have carefully examined the testimony of every witness in this case and have correlated those portions of the testimony of all witnesses which might have any possible bearing upon the point under discussion without finding that any light has been thrown upon the question. Plaintiff's sister, whom he had visited shortly before the unfortunate accident, *Page 426 
testified that, from her observation, her brother's health appeared to be good at the time. One of the police officers testified that he saw decedent at the hospital and that he was unconscious, and he further testified that he saw no blood in the street at the point of accident. The negro yardman, who was a witness to all the incidents except the actual impact of defendant's body with Woodley's automobile, testified extensively as to the position of the body in the street, and as to the facts surrounding the running over of the body by the second automobile, but aside from an observation that one of Ingram's legs moved a little to a straightening position after the first accident, and that he had the appearance of being "dead," there is nothing in his testimony of any assistance on this point. A second police officer testified that he went to the Schumpert Sanitarium in the course of his investigation, but he was not questioned, nor did he volunteer any information, as to the decedent's injuries. Plaintiff herself testified that she heard of the accident some hour or so after it occurred, but that she did not even go to the sanitarium, nor did she see the body of her husband until it was at the funeral home. The driver of the second car, Aycock, observed decedent's body and testified that he saw no movement except that resulting from breathing. Further than this, when questioned as to whether there was any blood, he said he only noticed that the back of one hand was skinned. This is the extent of the testimony of this witness on the point.
The witness who called the ambulance testified that he saw the body rock as the result of being run over by the Aycock car, but again there was no testimony as to the nature, character or appearance of the injuries.
Summing up all of the items above recapitulated, and applying the most favorable interpretation from the standpoint of plaintiff's claims that may be possible, we may regard these facts as being established:
(1) Plaintiff was struck by an automobile driven by the defendant, Woodley, and knocked to the street where he lay unconscious.
(2) Within a very brief space of time plaintiff's prostrate body was run over by another automobile driven by one Aycock.
(3) Though unconscious plaintiff was observed to be breathing and there was no evidence of blood except for an abrasion on the back of one hand at the point of accident.
(4) Plaintiff was removed to a sanitarium where he died some four or five hours after the accident.
The question is whether the above facts are sufficient to serve as the basis for a conclusion to the effect that the injuries inflicted by the impact of the Woodley car were the proximate causes of death.
We do not see how any court could properly justify an affirmative holding with respect to the proposition tendered above, in view of the extremely tenuous nature of the facts established. Particularly is this true in consideration of the fact that it must be assumed that competent medical testimony on these points was available to plaintiff and no explanation has been given for the failure to produce the same.
In arriving at this conclusion we are fully cognizant of the fact that accidental injuries received, though not the sole cause of death, if sufficiently established as contributing factors thereto, may be accepted as the basis for a judgment in damages. But if this was a fact in the instant case, then, certainly, it could and should have been brought out.
Stripping the case of all non-essential details, it is our opinion, under the facts, that no determination can be made with any reasonable certainty or accuracy as to what injuries, inflicted by which automobile, resulted in death.
Turning to the argument of learned counsel for plaintiff on this point, we quote same in its entirety as set forth in that portion of his brief under the heading "Cause of Death," as follows:
"The preponderance of evidence is sufficient to show the cause of death as well as any other element involved in this case. It is possible Mr. Ingram died of heart ailment before the car struck him. It is bearly possible that the fact that while he was lying in the street, in such condition Woodley *Page 427 
could not tell he was breathing, that this car driven by H.B. Aycock west out of Wilkinson Street around south on Fairfield, slowly over the legs of Mr. Ingram in some manner hastened the death; but there is not one word of proof to indicate that the car of Aycock in any manner injured Mr. Ingram. We do know the blow from the Woodley car was calculated to kill Mr. Ingram; that it had the immediate results indicating it had killed him, and without a reasonable doubt did kill him.
"The testimony of F.A. Perry (Tr. 88 and 91) of H.B. Aycock (Tr. 78 and 79) and Alec McGee (Tr. 50, line 20) as to condition of body in street, and of Robert Snell (Tr. 40, line 51) and Mrs. Ingram (Tr. 73, lines 21 to 24) as to condition of deceased later, shows the car of Woodley killed Mr. Ingram. Decisions showing death sufficiently proven are as follows: Constabel v. Miller, 15 La. App. 315, 131 So. 699; Biaggini v. Toye Bros. Yellow Cab Co., La. App., 163 So. 780; Dougherty v. Garrick, 184 Minn. 436, 239 N.W. 153, 77 A.L.R. 1286, 1292; Strobel v. Park, 292 Pa. 200, 140 A. 877, 57 A.L.R. 253."
The pith of counsel's argument appears to lie in the conclusions he has drawn to the effect that "the blow from the Woodley car was calculated to kill Mr. Ingram; that it had the immediate results indicating it had killed him, and without a reasonable doubt did kill him."
We find no reasonable justification in the record for these conclusions. Many a person has been rendered unconscious for periods of time of greater or less duration by blows sustained in almost every conceivable type of accident, and has recovered from the effects thereof.
Even without consideration of the factor of the second injury to the decedent by the Aycock car, we are impelled to feel that the facts established would constitute an exceedingly weak and unreliable basis upon which to predicate a definite conclusion as to the cause of death.
We have examined the authorities on this point, as cited in the above quoted portion of plaintiff's brief, and do not find that they support the contention made therein. The finding in Constabel v. Miller was based upon the competent testimony of the attending, physician of the decedent, who, as stated in the court's opinion, [15 La. App. 315, 131 So. 700], "was quite certain that the accident was responsible for her death * * *."
The opinion in the Biaggini case shows that there was an abundance of medical testimony by qualified physicians in the record before the appellate court, which court reached its conclusions by reason of an analysis and evaluation of such testimony.
In the Dougherty case the ruling of the Minnesota Supreme Court was with reference to the correctness vel non of the finding of a jury as to the cause of decedent's injury. The character, nature and effect of the injuries causing death were not discussed, and the annotation has no bearing upon this point.
[3] In the Strobel case the Pennsylvania Supreme Court held that there was sufficient evidence of injuries, namely, a crushing and mangling in an elevator accident, to justify the finding of the jury that the deceased was killed by the elevator. And, we point out the following pertinent observation from the opinion of the Court [292 Pa. 200, 140 A. 879]:
"Of course the burden was on plaintiff to show that death wasdue to the negligence of defendant and not to some internalaffliction. If there is any other cause to which, in equalfairness, the injury may be attributed, the jury will not bepermitted to guess which condition occasioned the injury."
We heartily concur in and endorse the above expression and carry the court's observation further by saying that we do not think it is any more proper for courts to guess at a cause of death than would be the case with respect to juries.
Though our examination of the jurisprudence of Louisiana on this point has not led us to any cases which might be regarded as being on all fours with the case at bar, we do find some which, in our opinion, clearly state the general principles upon which we depend for substantiation of our conclusions herein. *Page 428 
In Bishop et al. Y. Town of Mansfield et al., 144 La. 109, 80 So. 217, the Supreme Court held, under the facts of the case, that mere probabilities were not sufficient to support a judgment for damages for injuries to a decedent.
This court passed upon the point under discussion in the case of Ellis v. Edwards et al., La. App., 183 So. 116, 119, and in the course of the opinion the following observation was made:
"Defendants are under no duty to show how decedent was injured. The burden is on plaintiff to show that the decedent was run over by defendant's truck and that his injuries anddeath were caused by the fault and negligence of defendant'struck driver. He has failed to show either with that degree ofcertainty and a preponderance of the testimony, as is requiredby law."
The general rule is well expressed in 25 C.J.S., Death, § 87, page 1215:
"In order to warrant a recovery, plaintiff must show with reasonable certainty that the death was the proximate result of the alleged wrongful act or omission of defendant.
"In order to warrant recovery, a preponderance of the evidence is necessary and sufficient to show that the wrongful act or omission of defendant was the proximate cause of death. Such connection may be shown by circumstantial evidence which should be considered in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates; but such evidence must establish the connection reasonably and logically, and it has been held that it must be so strong as to preclude the possibility that death was due to a cause with which defendant was not connected. While there can be no recovery where the cause of death is left open to conjecture, it is sufficient to show with reasonable certainty that there was an unbroken connection between the wrongful act and the death without any intermediate cause not attributable to the original wrong. Where death may have resulted from either of two causes, for one of which defendant would be liable, and for the other not liable, plaintiff must show with a reasonable certainty that the cause for which defendant is liable produced the result, although it is unnecessary to negative all possible suggestions of the existence of other causes."
[4] Under the facts in this case we are constrained to hold that plaintiff has failed to discharge the burden of proof by establishing by a preponderance of the evidence the fact that the injuries sustained through the alleged negligence of the defendant resulted in death.
Since our finding on this point conclusively disposes of this case, we deem it unnecessary to discuss the questions of negligence and contributory negligence.
For the reasons assigned, the judgment appealed from is reversed, annulled, and set aside, and there is now judgment in favor of defendants rejecting plaintiff's demands, together with all costs.
KENNON, J., absent.
 On Rehearing.
[5] After reconsideration of this matter on rehearing, we are of the opinion that the interests of justice, as between the parties, may best be served by remanding the case for the taking of further evidence. Authority for this procedure is found in Article 906 of the Code of Practice.
While we adhere to the reasons expressed in our original opinion on the basis of the record as made up, it appears, from the facts set forth in the application for rehearing and in the documents attached in support thereto, that the question of fact involved is susceptible of clarification. This exact procedure, under almost identical circumstances, was followed by the Supreme Court in remainding a case on rehearing; Willis et al. v. Berry et al., 104 La. 114, 28 So. 888, 892. In the cited case the court relied upon the article of the Code of Practice above noted and interpreted the authority given therein as follows:
"The authority to remand is manifest when a vital question of fact may be made quite clear by further testimony."
It is therefore ordered, adjudged and decreed that the decree of the district court *Page 429 
in this case be annulled, avoided and reversed, and that our decree, heretofore handed down, also be annulled, avoided and reversed.
It is further ordered that this case be and it is hereby remanded to the court a qua for the admission of evidence bearing upon the cause of death of plaintiff's husband, Philip Graham Ingram, all other evidence to remain as filed, and for judgment thereon by said court, subject to the right of appeal at the election of the party cast.
Costs of this appeal shall be borne by appellee and all other costs shall await final determinat