## Mager et al. v. Horn & Hardart Baking Co.

*Edward I. Weisberg*, for plaintiffs.
*John J. McDevitt, 3d*, for defendant.

PIEKARSKI, J., August 14, 1939.—Plaintiffs, husband and wife, brought their action in trespass to recover for injuries sustained by reason of the wife plaintiff's having fallen on the floor of defendant's restaurant.

Verdicts against defendant in the sum of $500 in favor of the wife plaintiff, and in the sum of $44 in favor of the husband plaintiff were returned by the jury, and thereupon defendant duly filed its motions for new trial and judgment n. o. v.

The motion for new trial presents no weighty problem. The verdict was not against the evidence or the weight of the evidence; it was not excessive under the circumstances; nor can it even be inferred that it was capricious or carelessly arrived at. Consequently, this opinion will not be more extensively devoted to the consideration of that question.

The really substantial question is whether the record discloses that plaintiffs have presented such a case as would legally warrant verdicts in their favor, and with that question in mind we proceed to a discussion of the evidence, omitting details unnecessary to the determination of the problem, but keeping in mind the principle reiterated in Robb v. Niles-Bement-Pond Co., Inc., 269 Pa. 298, that the owner or occupant of premises who induces others to come upon them by invitation owes to them the duty of using reasonable or ordinary care to keep the premises in a safe and suitable condition, so that they will not be unnecessarily or unreasonably exposed to danger.

At 12:30 noon on April 5, 1938, Yetta Mager left her place of employment a few doors away to go to defendant's place of business for her lunch. This restaurant was of the automat and cafeteria type in which patrons themselves carry the food and beverage to their tables. This was not her first visit there—she had been eating lunch there every day for eight months. She had made one purchase; carried it to her table; then went to that section where tea is dispensed, and where many people

were in the aisle, got her tea and, while carrying it in her right hand, slipped and fell on the floor. The floor is designed in blocks of different colors, some darker, others lighter. She testified that she looked as she walked but could not see anything on the floor. She slipped on a dark block while walking in the aisle. Before she arose, she felt a "greasy spot, like a pat of butter".

(For the completeness of essential detail, it is to be noted that there are contradictions in her own testimony as to whether she did or did not look, but the question of her contributory negligence was left for the jury.)

Now up to this point there is no evidence as to the size of the "spot" or the duration of its presence on the floor or whether defendant knew or should have known of the existence of the allegedly dangerous condition. And had the evidence stopped there, a nonsuit or binding instructions for defendant might have been proper: MacDonald v. Gimbel Brothers, Inc., 321 Pa. 25.

But plaintiffs produced another witness who also had been a customer at defendant's restaurant. She came there three or four minutes after twelve noon of that same day, and while carrying her food, she slipped and almost fell at a greasy area about a foot wide near which she saw a little piece of butter. It was at this same spot that the wife plaintiff fell about twenty minutes to one—a half hour later. As far as this witness could remember, no employe of defendant cleaned up that part of the floor; and the condition of the floor from the time when this witness slipped to the time when the wife plaintiff fell remained unchanged.

At the trial, defendant made no denial that the wife plaintiff fell. Defendant showed that the floor manager whose duty it was to "supervise the floor and to take care of the customers" was then on duty; that the employes pass a given place during the noon hour in intervals from less than five minutes to ten or fifteen or twenty minutes; that the floor manager, after the wife plaintiff's fall, saw

a mark against a pillar which could have been "water or most anything".

The doctrine of res ipsa loquitur does not apply: Bechtel v. Franklin Trust Co., 120 Pa. Superior Ct. 587; nor did the mere occurrence of this accident create a presumption of negligence: Bloomer v. Snellenburg, 221 Pa. 25; Gorman et ux. v. Simon Brahm's Sons, Inc., 298 Pa. 142.

The self-service automat and cafeteria type of restaurant is well known. And equally well known is the fact that collisions, in such busy places as this was, are more frequent than in restaurants where the service is by waiters who usually are more adept in the carrying of a tray. Let one go to an automat or cafeteria at a busy time and he will see the comparative lack of facility and aptitude and dispatch with which the average guest carries his food and drink to his table; and he will hear how much more frequently the din of dishes falling from a tray adds to the customary noise; and he will see how much oftener food and beverage fall from the tray to the floor. The owner of such a restaurant knows this; perhaps, that is why one oftener sees the "bus boy" in such a restaurant than he does where service is by waiters. The restaurateur knows that his carrier customer will necessarily confine much of his attention to the tray, and not all of it to his path of passage. And when the crash comes, the food which only a few moments before was attractive to the eye of the hungry and the drink which seemed to embody satisfaction to the thirsty become just slippery, greasy substances whose presence on the floor becomes fraught with danger to the guest whose sight cannot, necessitate rei, be exclusively fixed on the path toward his table; nor can he be expected to ferret out these slippery, greasy spots. It is not unreasonable, therefore, that the law should require of the self-service restaurant keeper a greater degree of care than it does from the keeper who knows that the tray is in the hands of an expert whose qualifications he himself has had opportunity to pass upon. His, therefore, is the duty to provide a rea-

sonably safe path of passage under more difficult conditions.

In this case, a greasy substance was allowed to remain on a dark block of the floor for upwards of twenty minutes. Another guest had slipped over that same spot twenty minutes or a half hour before.

The defense that the invisibility of the spot to the wife plaintiff excused defendant because it must, therefore, have been equally invisible to defendant is not sound: Drucker et ux. v. Moskowitz, 119 Pa. Superior Ct. 377.

The instant case is clearly not governed by Ziegler et ux. v. Western Union Telegraph Co., 319 Pa. 274. There the danger was obvious. Carrying defendant's theory of the case to its logical conclusion, no recovery should be had in any case where a guest suffers injury by falling in an aisle; for on the one hand if the dangerous condition be obvious, no recovery can be allowed, and if it be not obvious, no recovery can be allowed. This is not the law: Markman v. Fred P. Bell Stores Co., 285 Pa. 378.

Since " 'All the authorities agree that it is incumbent upon the owner of premises upon which persons come by invitation, express or implied, to maintain such premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended' ": Nettis v. General Tire Co. of Phila., Inc., 317 Pa. 204; we hold that this case was properly submitted to the jury. And in so doing, we place no more unreasonable a burden on this defendant than was placed on defendant in Flora et ux. v. Great Atlantic & Pacific Tea Co., 330 Pa. 166.

Defendant's employes could have known of the conditions. The case was for the jury.

We, therefore, have dismissed defendant's motions for a new trial and for judgment non obstante veredicto.

---

NOTE.—An appeal from the foregoing decree was taken to the Superior Court, but was subsequently withdrawn.