## Strobel *v.* Park, Appellant.

*Negligence—Elevators—Doors—Passenger—Sudden fall of passenger—Failure to afford proper protection of passenger—Negligence per se—Proximate cause.*

1. One who owns and operates elevators, must keep pace with science, art and modern improvements and appliances; his duty to his passengers is to provide and make use of the best and most approved machinery and devices in general practical use for the safety of passengers.

2. The owners of elevators are held to the highest degree of care in the construction of cars, and, when an elevator carrying passengers is operated without protection on all sides, that is negligent construction.

3. If an accident may reasonably be anticipated as the natural and probable result of the absence of guards or doors on all sides of elevator cars carrying passengers, then the failure to provide such protection is negligence per se.

4. If the construction of an elevator car permits a passenger to reach the elevator shaft while the car is in motion, it cannot be termed anything less than dangerous.

5. An owner of an elevator must anticipate the normal and probable acts of passengers; and he must know that at some time a passenger may suddenly collapse, move or be pushed about, and as a result fall into an elevator shaft or against its sides, if he is not protected.

6. In an action to recover damages for the death of a passenger in an elevator the case is for the jury, where it appears that the elevator cage was not provided with an entrance door or other guard on the side toward the entrance, that the deceased suddenly fell forward and was struck by a part of a floor projecting into the elevator shaft, and was pronounced dead a few minutes later.

7. In such case the court could not say, as a matter of law, that the man's death was the result of apoplexy, and not as a result of his being crushed by the car.

8. The test is whether the circumstances were such as to satisfy reasonable and well-balanced minds that the accident resulted from the negligence of the defendant.

9. The testimony to establish negligence need not exclude everything which the ingenuity of counsel might suggest as having possibly caused or contributed to the death.

10. The rule does not mean that one whose negligence kills a man, who had suddenly been taken ill at the moment, may escape responsibility on the theory that he may have been already dead, or would have died from natural causes.

11. Where a man in apparent good health is found dead, his head and body mutilated, the most likely inference is that he died as the result of external violence.

12. When a person falls, and, as a result of the fall, is thrown into a dangerous situation and is injured, the proximate cause of the accident is the negligence of the person who is responsible for the dangerous condition.

Argued October 6, 1927. Before Moschzisker, C. J., Frazer, Walling, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 146, March T., 1927, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1925, No. 1128, on verdict for plaintiff, in case of Margaret A. Strobel v. Lewis A. Park. Affirmed.

Trespass for death of plaintiff's husband. Before Evans, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $18,000. Defendant appealed.

*Error assigned,* inter alia, was refusal of judgment for defendant n. o. v., quoting record.

*Charles F. Patterson,* with him *Francis R. Harbison,* for appellant.—There is no evidence that deceased's death was caused by the alleged negligence of defendant and that he had not died from some internal cause for which defendant was not liable: Birch v. Ry., 165 Pa. 339; Miller v. R. R., 270 Pa. 330; Fredericks v. Refining Co., 282 Pa. 8; East End Oil Co. v. Torpedo Co. 190 Pa. 350; Ott v. Boggs, 219 Pa. 614; McAvoy v. Kromer, 277 Pa. 196; King v. Brick & Mining Co., 284 Pa. 277.

The alleged negligence of defendant was not the proximate cause of the injury resulting in the death of plaintiff's husband: Elliott v. Light Co., 204 Pa. 568; Bruggeman v. York, 259 Pa. 94; Herr v. Lebanon, 149 Pa. 222; McGrell v. Office Building Co., 153 N. Y. 265.

A carrier's duty to provide and use the most improved machinery and appliances does not obligate it to adopt and use every new and untried safety device: McKnight v. Kresge Co., 285 Pa. 489; Meier v. R. R., 64 Pa. 225.

*William H. McNaugher,* with him *Alter, Wright & Barron,* for appellee.—There is evidence to justify the finding of the jury that deceased was killed by his head being crushed by the elevator, and that he did not die from natural causes: Biesecker v. R. R., 276 Pa. 87; Curran v. Ins. Co., 251 Pa. 420; Munsey v. Webb, 231 U. S. 150.

There was evidence to justify the finding of the jury that the negligence of defendant was the proximate

cause of the injury resulting in the death of plaintiff's husband: Sturgis v. Kountz, 165 Pa. 358.

There was evidence justifying the finding of the jury that defendant was negligent in omitting to install a collapsible car door on his elevator: McKnight v. Kresge Co. 285 Pa. 489.

OPINION BY MR. JUSTICE KEPHART, November 28, 1927:

The deceased, on his way to an office where he was employed, was a passenger on an elevator owned and operated by defendant. The car or cage in which he was riding was of the arc or curved type, number six in the series of elevators. It was used for freight and passenger service. The chief difference between this and other elevators in the building was that the whole front of the cage facing the floor landings was entirely open and unprotected, there being no collapsible safety gate or other protection. The two sides and the rear of this elevator, as well as the others, were enclosed by grill work. The cage was 56 inches wide by 49 inches deep. On each floor, and forming a side of the elevator shaft, there is grill work extending from the floor to the ceiling. In this grill work there is a door that permits ingress and egress to and from the elevator shaft and car. The grill work and door is set back four inches from the edge of each floor, which thus projects four inches into the elevator shaft; when the car reaches the floor landing, there is also a space of one inch between the car and floor. On the inside of the shaft, at each threshold or floor landing, there is a device ten inches square projecting into the shaft a couple of inches to control the door on each floor.

While the car was in upward motion, the deceased suddenly fell to the floor. The elevator did not stop, and his head, projecting into the elevator shaft, struck the threshold of the ninth floor, which dragged him farther forward, and his body became wedged between the shaft and the bottom of the cage, his head dragging

along the grill work between two floors. As the elevator passed the tenth floor, the car, still moving, forced a part of his body against the gate, or device controlling the door, with such force that the door opened, his body being thrown feet forward to the pavement of the tenth floor, so that, when the car cleared the door opening, his head, shoulders and arms hung down the elevator shaft. He was pulled out of the shaft by a man standing on the tenth floor, and was pronounced dead a few minutes later. The occupants of the car at the time of the accident were the deceased, a passenger who had with him a small boy, and the operator. A verdict having been recovered by the widow, this appeal followed.

The defendant contends that the court below erred in submitting the case to the jury for the reason that no negligent act of the defendant had been shown. Plaintiff charged negligence in the failure to install a collapsible door or other protection at the front of the car. Defendant replied that no such device as a collapsible door had ever been installed on the arc type of elevator and its practicability was established only by opinion evidence; and that, therefore, no duty rested on the defendant to install such a device unless it had been demonstrated from actual operation to have been of practical use. He contends that the owner of a building is not obliged to adopt every new and untried device for the safety of operating machinery, and submits that the elevators in a large number of office buildings are not equipped with collapsible doors or other protection at the front or entrance ways. On the other hand, the evidence for plaintiff showed that the larger percentage of passenger-carrying elevators were so equipped. If this was a necessary fact to be found to establish defendant's negligence, there was sufficient evidence from which the jury could find that it was customary to have collapsible doors or other protection in front of and encasing elevator cages. While it is true that the owner

is not bound to furnish appliances which will make accidents impossible, and is only required to furnish those actually used by men of judgment and common prudence, yet if we assume plaintiff's evidence to be correct, as we must, defendant failed in his duty to the passengers. When a recognized standard of comparison (namely, other elevators) is present, it furnishes the basis for concluding that defendant was negligent. An elevator owner must keep pace with science, art and modern improvements in appliances; his duty to his passengers is to provide and make use of the best and most approved machinery and devices in general practical use for the safety of passengers: McKnight v. S. S. Kresge Co., 285 Pa. 489, 492; 10 C. J. 955; 4 R. C. L. 1204.

We need not rest our conclusion that the failure to provide protection in the front of the car rests on the similarity of construction of this and other elevators. If an accident may be reasonably anticipated as the natural and probable result of the absence of guards or doors on all sides of elevator cars hauling passengers, then the failure to provide this protection is per se negligence. The duty rests on the carrier of passengers to see that the instrumentality used to convey passengers should be constructed so as to be reasonably safe, according to the use to be made of it. The duty holds the owner or the carrier to the highest degree of care and foresight. A passenger, entering an elevator, commits himself absolutely to the care and protection of the owner so far as the operation of the car and its construction is concerned. If the construction of the elevator car permits the passenger to reach the elevator shaft while the car is in motion, it cannot be termed as anything less than dangerous. Take the present instance, this cage, crowded or uncrowded, permits one standing near the unprotected end, by a nod of his head, to receive a blow that would kill him, or, by extending

his arm or shoulder outside the path of the car, to receive a severe wound. The rule announced in this and other states means precisely what it says. The owners of elevators are held to the highest degree of care in the construction of cars, and, when an elevator carrying passengers is operated without protection on all sides, that is negligent construction.

We endeavored to point this out in McKnight v. S. S. Kresge Co., supra, when we said, the owners of passenger elevators are held to the highest degree of care in the construction, maintenance and operation of its elevators in protecting persons carried thereon from danger. While they are not insurers of the passenger's safety, their liability for injury is similar to that of a common carrier. This announcement was no change in the law, (see Fox v. Phila., 208 Pa. 127, 134) but was in accord with the great weight of authority in this country. (See our recent opinion as to the use of escalators by Mr. Justice WALLING: Petrie v. Kaufmann, 291 Pa. 211. "The whole question comes down to whether we are prepared to say as matter of law ......that, in an elevator constructed as this was with a special source of danger in the shaft outside the car, to require the defendant to guard the door space in transitu, at his peril, is too strict a rule. We cannot go so far: McDonald v. Toledo Consol. S. Ry. Co., 74 Fed. Rep. 104, 109"; Munsey v. Webb, 231 U. S. 150, 156.

Defendant urges he could not have anticipated this injury as the reasonable consequence, or the natural and probable result, of his negligent act in failing to protect the front of the car. Here was a box 56 inches wide facing the opening and 49 inches deep; there were very dangerous projections in the shaft area. The operator was intent on his business of operating the car, and could not have closed the open space. The normal and probable acts of passengers must be anticipated. The elevator hauls the old, young, sick, infirm,

cripple and the blind. The owner must know that at times a passenger may suddenly collapse, move or be pushed about, or otherwise get some part of his person outside the car while it is in motion; that a feeling of sickness, dizziness, or temporary indisposition to cause this is not an uncommon experience with those who ride often in elevators, especially when the car moves swiftly. These results are obvious and must be anticipated in the construction of the car; it must be so built that, if such results occur, the passenger will not be catapulted into the elevator shaft, or fall against its sides. The court did not err in submitting this question to the jury: Munsey v. Webb, supra.

Was there sufficient evidence to justify the finding of the jury that deceased was killed by the elevator and that he did not die from natural causes? Deceased was a young man of good health and habits. Although he complained of sickness in the morning, the extent and character of it is not shown. It may have been but a slight indisposition. While riding upward in the elevator, without the slightest warning, he fell forward. Whether he fainted or had a stroke is not certain. The facts do not present a case where the court should say, as a matter of law, that the man's death was the result of apoplexy and not by being crushed by the car. Of course the burden was on plaintiff to show that death was due to the negligence of defendant and not to some internal affliction. If there is any other cause to which, in equal fairness, the injury may be attributed, the jury will not be permitted to guess which condition occasioned the injury: Fredericks v. Atlantic Refining Co., 282 Pa. 8, 15; 17 C. J. 1304. But the test is whether the circumstances are such as to satisfy reasonable and well balanced minds that the accident resulted from the negligence of the defendant: King v. Darlington Brick and Mining Co., 284 Pa. 277. We have repeatedly stated that the testimony need not exclude everything which the ingenuity of counsel may suggest as having possibly

caused or contributed to the death: Biesecker v. Penna.
R. R. Co., 276 Pa. 87, 90; Gallivan v. Wark Co., 288
Pa. 443, 454.

The rule certainly does not mean that one whose
negligence kills a man, who had been suddenly taken
ill at the moment, may escape responsibility on the
theory that he may have been already dead, or would
have died from natural causes. Of course, if it could
be reasonably inferred that the man had been dead
before he reached the floor, another question would be
presented, but there is no evidence here which would
justify such an inference. Where a man in apparent
health is found dead, his head and body mutilated,
and nothing more is known of the cause of his death,
the most likely inference is that he died as the result
of external violence. If the thing that produced such
violence is known, it is the probable cause. This is
only common sense and common experience, and the
circumstances here are sufficient to make out a prima
facie case of death by such violence: Sturm v. Employer
Liability Assurance Corporation, 212 Ill. App. 354;
Wehle v. U. S. Mutual Accident Association, 153 N.
Y. 116, 47 N. E. 35; Semmons v. National Travelers
Benefit Association, 180 Iowa, 666, 163 N. W. 338. The
bare possibility of death from apoplexy or fatal stroke
was not sufficient for the court to hold as a matter of
law that it outweighed the prima facie case of death
by violence which was of such nature as to produce
reasonable certainty in the minds of the jury. In Mun-
sey v. Webb, supra, a case almost identical with the
case at bar, an autopsy was held. Here there was, it
is true, no autopsy, but we have evidence that the de-
ceased was in good health. The cause of death was
for the jury to determine.

Defendant urges that his negligence was not the prox-
imate cause of the accident, but that it happened be-
cause of the physical collapse of the deceased. When
a person falls, and, as a result of the fall is thrown

into a dangerous situation and is injured, the proximate cause of the accident is the negligence of the person who is responsible for the dangerous condition.   Professor F. H. Bohlen, in his article on "The Probable or the Natural Consequence as the Test of Liability in Negligence," 40 Am. Law Register (N. S.) 79, 148, reprinted in "Studies in Torts," page 1, says: "In a word, to determine the fact of negligence, reasonable probability of injury is the test; to determine the extent of liability,—it is the unbroken chain of natural cause and effect."

We have discussed above what defendant should have anticipated and what we said on that branch of the case applies here with greater force.  On the other hand, when the man fell forward, the natural consequence of his fall was to strike some part of the elevator shaft. The case is very similar to Sturgis v. Kountz, 165 Pa. 358, where a steamboat whistle frightened horses on a ferryboat and they backed against the entrance to the boat, broke the guard rail, fell into the water, and were drowned.  The same question was passed on in Meisle v. New York Central Railway, 219 N. Y. 317, 114 N. E. 347.  "Would ordinary prudence have suggested to the person sought to be charged with negligence that his act or omission would probably result in injury to some one?"  22 R. C. L. 125.  The answer is that it would have.  See Munsey v. Webb, supra, p. 155.

The case at bar is not similar to that of a painter who fell from a ladder on which he was at work, and, in the fall, clutched a live electric-light wire and was injured (Elliot v. Allegheny County Light Company, 204 Pa. 568), nor to that of two boys trespassing on defendant's property near some dangerous machinery who were ordered to leave before the employees put the machinery in motion: Daniels v. Hilman Coal & Coke Co., 279 Pa. 47, 49.  In the latter case, the boys were slow in starting, and, when they did, one slipped and his shoe caught in the machinery that had been

started. There is a distinct separation of incidents in all the cases cited which clearly distinguish proximate from the remote cause.

This disposes of all the important questions raised in the case. The assignments to the charge of the court not specifically covered, we have considered and find them immaterial. The case was carefully tried, and, notwithstanding the able argument for appellant.

The judgment of the court below is affirmed.