## Flora et ux. *v.* Great Atlantic & Pacific Tea Company, Appellant.

Argued March 28, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John A. Metz,* with him *W. C. McClure,* for appellant.

*John Duggan, Jr.,* for appellees.

OPINION BY MR. JUSTICE MAXEY, April 18, 1938:

These are appeals from judgments in actions of trespass brought respectively by the parents of a minor child

and by the minor child herself for personal injuries alleged to have been suffered by the latter as a result of negligence on the part of defendant corporation.

About 4:30 p. m., February 26, 1935, Frances Flora, aged 13 years and 10 months, and accompanied by a younger brother, entered a retail store owned and operated by defendant. The day was described as "wet, slushy and snowy" and it was said that "the streets and sidewalks were covered with snow and slush and water." The temperature was about 40 degrees and the snow was melting. On account of these conditions, persons coming into defendant's store brought snow and water on their shoes and some of this got onto the floor. From 9 a. m. at two-hour intervals a boy employee of the store mopped up the floor to remove the water from it. After each mopping he spread sawdust on the floor wherever it was wet or damp. He testified that at 3 p. m. he mopped up the floor thoroughly and put fresh sawdust down. At 4 p. m. he again began to "sweep up" but, on account of customers coming in, he did not finish the job of putting down fresh sawdust. The minor plaintiff and her brother were in the store making purchases for about twenty-five minutes. She was carrying three packages and as she was about to leave the store, she slipped and fell violently, sustaining, so it was alleged, serious and permanent injuries to her head, spine and limbs. When asked what caused her to slip and fall, she replied, "The floor was wet." She stated that water and slush were on the floor. There was no sawdust on the floor at the place where she fell. There was a conflict of testimony as to the condition of the floor where she slipped. Several witnesses testified that there was no water, slush or snow at that point but that the sawdust there was merely damp. At the conclusion of plaintiffs' case, defendant moved to strike out all the testimony with regard to water and slush on the floor and for a nonsuit on the ground of variance between the allegata and probata. These motions were denied. The jury

returned a verdict for the minor plaintiff in the sum of $3,000 and a verdict for her parents in the sum of $500. Separate motions were filed for judgment n. o. v. and for a new trial. These were denied. These appeals followed.

Appellant raises four questions, and we will discuss them in their order. The first is whether or not the fact that a customer slips on slush and water brought into a store during business hours, one hour after the snow was mopped, constitutes evidence of negligence on the part of the storekeeper. This question is adequately answered in the opinion of the court below, as follows: "The fact that throughout the morning and early afternoon they [the store employees] had mopped up the area in question and covered it with sawdust, knowing the weather conditions outside, is proof from which the jury could properly infer knowledge on their part that snow and slush were being tracked inside and deposited near the door. With their knowledge that weather conditions continued to be the same throughout the entire day, and that a large number of patrons entered the store after three o'clock when the last mopping up was done, the conclusion is almost inescapable that they must have known from 3 p. m. forward that fresh slush was constantly being brought onto the floor, and that no precautionary measures were being taken to minimize the consequent danger to customers."

In *Nettis v. General Tire Co.,* 317 Pa. 204, 177 A. 39, this court said: " 'All the authorities agree that it is incumbent upon the owner of premises upon which persons come by invitation, express or implied, to maintain such premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended.' " In *Dalgleish v. Oppenheim, Collins & Co.,* 302 Pa. 88, 91, 152 A. 759, this court said: "It is, of course, a storekeeper's duty to use ordinary care to protect a customer from harm. [Citing cases.]

Whether it did so, in the instant case, depended on the facts as the jury found them."

Appellant contends that the court below fell into error in holding that failure to remove the water and slush from the floor constituted a breach of duty by the defendant. Counsel for appellant say that the decision of the court below "is not supported by any Pennsylvania case and flies flatly in the face of the decisions of other courts holding that, on such facts, there is no question for the jury and that it was, as a matter of law, under the proven circumstances, no breach of duty on the defendant's part to suffer the accumulation of slush and water to be and remain on its store floor."

We think the decision of the court below is supported in principle by the decisions in several cases in this jurisdiction. In *Robb v. Niles–Bement–Pond Co., Inc.,* 269 Pa. 298, 112 A. 459, this court held that where an iceman in delivering ice steps in a pool of oil, about two feet in diameter, which had been suffered to remain on the cement floor for five hours, at a place near the doorway through which defendant's servant directed plaintiff to take the ice, both the plaintiff's contributory negligence and the defendant's negligence were for the jury. In *Markman v. Bell Stores Co.,* 285 Pa. 378, 132 A. 178, this court held that where a customer in a store slipped on vegetable refuse, the questions of contributory negligence and negligence were for the jury. In that case this Court said: "The mere presence of such refuse, . . . does not in itself show negligence, for this condition may temporarily arise in any store of this character, though the proprietor has exercised due care; and, if it appears that proper efforts are made to keep clean the passageways so they may be safely traversed, he is not to be held responsible if some one accidentally slips and falls. Where, however, it is disclosed, as here, that the dangerous condition, arising from the same cause, was not a mere chance occurrence, but so often repeated as to call for frequent notices to the owner, . . . we cannot

say the jury was not justified in finding defendant failed in his legal duty."

In *Ross v. Mayflower Drug Stores, Inc.,* 324 Pa. 513, 188 A. 346, this court sustained recovery in a case in which the minor plaintiff, in leaving defendant's store, in which she had been a customer, fell on an icy step leading to the pavement and was injured. That case, however, differs from the case at bar in that the manager of the drug store had notice in the afternoon of the presence of the ice and had neither removed it nor adopted any other measures to protect his customers. In the instant case, the defendant had resorted to some measures to protect its customers but had not resorted to any effective measures for an hour and a half before the accident in question.

This case is admittedly a very close one. However, we hold that it is not placing an unreasonable burden upon the owner of a store to take greater safeguards than were taken in this case to protect customers against falls such as the one the minor plaintiff had. The floor of the store was covered with smooth linoleum which had, as one witness described it, "a slippery disposition." It is a matter open to common observation that many stores have floor coverings of rubber or other materials which are proof against slipping. It was shown that it was defendant's practice in bad weather to strew either an anti-slip compound or sawdust on the floor, to prevent slipping. This indicates that defendant was aware of a floor condition which might cause injury to its customers. That this condition could have been obviated by comparatively inexpensive attention is too clear to require argument. If a combination of a "smooth linoleum" with water or snow produced a slippery condition at a place where invitees had occasion to walk, sometimes, as in the instant case, with packages in their arms or hands, it was defendant's duty to correct that condition.

Appellant quotes at great length from the opinion of the Supreme Court of Ohio in the case of the *S. S. Kresge Co. v. Fader* (1927), 158 N. E. 174. We agree with the statement in that case that the "owners or lessees of stores, office buildings," etc., "where the public is invited to come on business or pleasure, are not insurers against all forms of accidents that may happen to any who come." We also agree that "it is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas." In the instant case, no "large force of moppers" was required to make the place reasonably safe for shoppers. The attention of one boy would have met all the requirements of the situation. Slipping on wet linoleum is of such frequent occurrence that those who have linoleum on the floors of their stores and who permit it to become and remain wet, cannot successfully plead that such a fall as the minor plaintiff sustained was not foreseeable. In the case of *Ebbert et al. v. Phila. Electric Co.*, 330 Pa. 257, 198 A. 323, we said, in an opinion handed down on March 31, 1938: "One duty imposed by law is to use due diligence to avoid causing harm which an individual has no legal right to inflict upon another. This duty is breached by any legally harmful act or omission which might have been foreseen and avoided, especially when the person injured is one for whose safety and protection the defendant was at the time under some special obligation to act with due foresight." The question whether under the facts here present, the defendant acted with due foresight, was preëminently for a jury.

The next question raised is whether or not the trial judge erred in failing to call the jury's attention to the probabilities of the case arising from the defendant's overwhelming superiority in number and disinterestedness of witnesses. At the close of the charge, the judge asked of defendant's counsel: "Do you want me to add

anything or correct anything?" The reply was: "No." The trial judge did, in his charge, call attention to "the testimony from employees of the store and from patrons of the store . . . that the spot where the accident occurred had been swept and then mopped, that is, dried by a mop, and then covered with sawdust on three occasions between 3 o'clock and the time the child was hurt" and that "at the time the child was hurt there was nothing on the floor at that point except a damp spot and some sawdust, which was somewhat damp, but that there was no water and that there was no slush." We think that in this excerpt and in other parts of the charge the trial judge adequately reviewed defendant's contentions and evidence.

The third question is: "Did the trial judge err in permitting plaintiff's counsel to examine witnesses as to an anti-slip compound customarily used by the defendant on its floors and the fact that defendant did not use its customary compound on the floor on the day of the accident?" When plaintiff's witness was testifying as to this compound, the trial judge said: "I will instruct the jury that the matter of anti-slip compound or the absence of it is not in this case as an element of negligence." The reference to an anti-slip compound came into the case when plaintiff's attorney was examining the witness, who had been manager of the store in question when the accident happened, in reference to a signed statement made by the witness on September 10, 1936, and in which he had said: "The floor had been in this condition [very slippery] for a few hours previous to the accident, as we did not have any anti-slip, which is used in the Atlantic and Pacific stores for the purpose of making the floors safe to walk upon." There was also another reference in the statement to "a bag of anti-slip" which arrived in the store three days after the accident though the witness had, according to the statement, requested his assistant to obtain it previous to the accident "on account of the bad weather." The trial

judge said: "It is admitted only for one purpose, merely to show the extent to which the witness says the statement represents the true state of facts, but not as proving any negligence." The witness had made a previous written statement as to the "very slippery condition" of the floor and this was at variance with his sworn testimony. The court committed no error in permitting plaintiff's counsel to interrogate the witness as to this former statement.

The fourth question is: "Where plaintiff pleads she slipped on 'a pool of ice or snow' and proves at trial that she slipped on water or slush, did the trial judge err in refusing to strike out all the testimony as to water and slush?" The difference between "ice" and "water" and between "snow" and "slush" so far as concerns their facilitation of feet slipping under the circumstances here present, is obviously so nearly negligible as to require no discussion to support an answer in the negative.

The judgments are affirmed.

Mr. Justice SCHAFFER dissents.