Bowser et ux., Appellants, *v.* J. C. Penney Company.

2

J. Campbell Brandon, with him Brandon & Brandon, for appellants.

Lee C. McCandless, with him Marshall & McCandless and James E. Marshall, for appellee.

OPINION BY MR. JUSTICE DREW, April 8, 1946 :

This is an appeal from the refusal of the court below to take off a compulsory nonsuit. Mildred E. Bowser, plaintiff, was injured by a fall alleged to have been caused by the negligence of the J. C. Penney Company, defendant. She and her husband, Leroy E. Bowser, co-plaintiff, brought an action in trespass against defendant and after they had presented their evidence, the trial court on motion of defendant, granted a nonsuit on the ground that plaintiff had not established negligence.

Viewing the evidence as we must in the light most favorable to plaintiffs and giving them the benefit of all proper inferences (Kimble v. Wilson, 352 Pa. 275, 42 A. 2d 526), the following facts are established: On March 20, 1942, plaintiffs entered defendant's store in the City of Butler, Pennsylvania, at 9:40 A.M. to purchase some men's work clothes. They walked down the store aisle of the first floor, Mrs. Bowser a few feet ahead of her husband, and when she was about halfway to the rear of the store, she slipped and fell. Her husband and Mr. Robinson, an employee of defendant, assisted her to her feet. She asked why the floor was so slippery and Mr. Robinson said that it had been waxed

the previous evening. Plaintiffs then examined the floor and found that where plaintiff fell there was an accumulation of wax, the wife testifying that it was a spot twelve inches square while the husband said it was somewhat larger—1 foot by 2½ feet.

Store owners who invite the public to do business on their premises, although not insurers of the safety of the invitee, have the affirmative duty of maintaining such premises in a reasonably safe condition for the contemplated use thereof and the purposes for which the invitation was extended, or to give warning of any failure to maintain them in that condition: *Vetter v. Great A. & P. Tea Co.*, 322 Pa. 449, 185 A. 613; *Nettis v. Gen. Tire Co. of Phila. Inc.*, 317 Pa. 204, 177 A. 39. The doctrine of res ipsa loquitur is inapplicable to such a case and plaintiff must establish the negligence of defendant. No liability attaches from the mere happening of the accident: *Dimarco v. Cupp Grocery Co.*, 88 Pa. Superior Ct. 449.

We have held that it is not negligence per se on the part of an owner to wax or oil his floors: *Diver v. Singer Mfg. Co.*, 205 Pa. 170, 54 A. 718. The fact that a person falls on a recently waxed floor does not of itself justify a finding of negligence on the part of the owner: *McCann v. Phila. Fairfax Corp.*, 344 Pa. 636, 26 A. 2d 540. But, if the floor is improperly waxed thus creating a dangerous condition, the question of negligence of the owner is for the jury: *Weir v. Bond Clothes, Inc.*, 131 Pa. Superior Ct. 54, 198 A. 896; *Ralston v. Merritt*, 117 Pa. Superior Ct. 487, 178 A. 159; *MacDonald v. F. & W. Grand*, 89 Pa. Superior Ct. 526. However, the trial judge should not permit an issue of fact to be presented to the jury, where the evidence is such that upon full belief and the drawing of all proper inferences, reasonable men could not reach the conclusion that there was negligence. Plaintiffs rest their claim of negligence on the ground that there existed a spot of wax on the store floor which caused Mrs. Bowser to fall and since this condition existed the proper inference to draw was that

the wax was improperly applied. The real question is not whether there was an improper application but whether such alleged improper application created a condition so obviously dangerous as to amount to evidence from which an inference of negligence would arise: *Diver v. Singer Mfg. Co.,* supra; *Dimarco v. Cupp Grocery Co.,* supra.

The testimony, in part, presented by plaintiff as to the condition of the floor where she fell is as follows:

"Q. As you went along in the store, had you noticed anything as to the condition of the floor? A. Nothing until I slipped. Q. What was the floor like where you fell? A. The first you could tell there were new boards because they weren't as dark in color as the other boards were, and this Microshene was shining and waxy. It had sort of a greasy wax on it . . . Q. And they got you up and you say the first you noticed the condition of the floor as you describe it, was at that time? A. It was just a waxy, glossy film on the floor and there was more in that place than there had been toward the front of the store. It looked as though they had started to wax and did not go back and get it spread out evenly. Q. Was there any of it on your clothing? A. On my hose and it went clear through to my legs. Q. What was it? A. It left a yellowish, brown glossy, waxy mark."

On cross-examination she testified:

"Q. What was the condition at that spot? A. There was a waxy, glossy finish in the area where I fell. Q. How large was that area? A. I would say about 12″ wide and possibly 12″ long . . . Q. What was the condition there and further back? A. The floor on back seemed to be dry, while this was wet there where I fell."

Mr. Bowser testified on direct examination:

"Q. Did you notice her clothing or anything about the floor where she fell? A. Right where she fell there was a small spot that was sort of greasy where she slipped on. The further back in the store you got, the floor got lighter . . . Q. How big a space did you say this was that the grease was on? A. I don't know. I

would say it was about 2½ feet long and about a foot wide approximately."

On cross-examination he said:

"Q. What was this condition? A. There was a spot there on the floor that was more greasy or sort of waxy like than any other place in the aisle. Q. And this could be observed by looking at it? A. Yes. Q. So had your wife looked, she could have seen this? A. If she had been looking closely but it wasn't that much brighter there than the rest of the floor that you could pick it out too readily. Q. What do you mean? A. It wasn't so much there that it showed up from the rest of the floor, but when you examined it you could see this more on the floor there than at any other place. Q. You could glance at the floor and not notice it? A. That's right. Q. What had you to do to observe it? A. When you stopped and looked right down at it you could see that this stuff was on the floor at this particular spot . . . Q. And this was the only place you saw that there was this accumulation of wax or grease? A. That's right."

From this testimony it appears that there existed a spot on the recently waxed floor where there had been a heavier application of wax or where there had been an uneven absorption of the wax by the wood, the difference so slight that in order to see it one had to stop and look "right down at it". This is not such evidence as would show that a condition had been created so obviously dangerous that an inference of negligence could arise. We agree with the learned court below that: "There is no evidence that it [the wax] was improperly applied, there being merely a film that was not observable in walking over it . . . Under such circumstances, to render this defendant liable would be to reverse the well established rule that the owner of a store is not an insurer of the safety of his patrons."

The order refusing to take off the nonsuit is affirmed.