Burton, Appellant, *v.* Horn & Hardart Baking Co.

Argued April 16, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Samuel I. Sacks,* with him *Sacks & Piwosky,* for appellant.

*John J. McDevitt, 3rd,* with him *Peter P. Liebert, 3rd,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, May 29, 1952:

This is an appeal from a decree by the Court of Common Pleas of Philadelphia County refusing to take off a nonsuit in a trespass action for personal injuries.

Plaintiff, a 76 year old woman at the time of the accident, slipped as she was going down the steps leading to the ladies' room in one of defendant's restaurants. The accident occurred on November 21, 1949, about 11:20 a.m.

The steps were 44 inches wide and after a series of three steps there was a landing and a number of steps leading to the basement and the ladies' room. These steps had handrails on both sides and were well lighted. The plaintiff and her daughter testified that, after reaching the landing, the plaintiff slipped on the top step of the second series. At the time plaintiff slipped she had hold of the railing on her right side, her daughter was supporting her left arm and also holding onto the railing on the other side.

The only testimony relied on to hold the defendant liable is as follows: Plaintiff testified, ". . . I step a little bit and after this I step with the left foot on the step, and I step the first step, and I don't know what's the matter; it was slippery, I don't know, and I fell down." And again she said, "Maybe it was a little bit slippy, the steps." Her daughter testified, ". . . I saw that the steps were wet, as though they had just been wiped down." When asked to describe the wet condition of the steps, she replied, "Well, I would say when I would wipe my steps down, you know, with a wet cloth, wash them down, they were wet; it wasn't pails of water, anything like that on them; it was just, you know, as though they had just been wiped down." She further said, "I would say something like slightly wet; damp wouldn't be wet enough."

Thus, in summary, all that plaintiff's evidence established was that she slipped on steps that were slightly wet, apparently because they had just been washed. The words of Mr. Chief Justice DREW (then Mr. Justice DREW) in *Bowser et ux. v. J. C. Penney Company,* 354 Pa. 1, 46 A. 2d 324, state the general rule, at p. 4: "The real question is not whether there was an improper application but whether such alleged improper application created a condition so obviously dangerous as to amount to evidence from which an inference

of negligence would arise:". In this case there was no such evidence.

In *Flora et ux. v. Great Atlantic & Pacific Tea Company,* 330 Pa. 166, 198 A. 663, which appellant relies upon, there was water and slush on the floor which the owner recognized as dangerous and failed to correct. The instant case is also distinguishable from *Brand v. Donahoe's Incorporated,* 357 Pa. 474, 55 A. 2d 362, where plaintiff slipped because soap was permitted to remain on the floor. In that case, although this Court upheld a verdict for the plaintiff, Mr. Justice PATTERSON said, p. 477, "Certainly, it is not negligence to wash a floor and proof of an improper washing must be had."

Under the view we take of this case it becomes unnecessary to consider whether the evidence was sufficient to warrant an inference that the defendant had notice of the condition because it was its employe who had washed the steps.

Appellant also contends that the trial judge improperly ruled certain evidence inadmissible. At one point in the trial the daughter was not permitted to state what she said to the manager of the defendant's restaurant shortly after the accident. It appears in the record that the manager did not answer her. Plaintiff's theory of admissibility must therefore depend upon an admission by an agent through silence.[1] But, "The maxim 'silence gives consent' is not an invariable and precise rule of evidence. 'The general principle of relevancy tells us that the inference of assent may safely be made only when no other explanation is equal-

---

[1] Actually counsel made no offer of proof of what the daughter said to the management, did not raise the point specifically in his motion for a new trial and suggested to the court that the testimony was admissible on the question of notice. Obviously, such testimony was not admissible to prove notice of any dangerous condition since the accident had already happened.

ly consistent with silence.' Wigmore on Evidence, 3rd Ed., §1071." *Smith et ux. v. American Stores Company,* 156 Pa. Superior Ct. 375, 379, 40 A. 2d 696; *Moore v. Smith,* 14 S. & R. 388, 393. In the instant case the manager's silence may well have been motivated by a desire to avoid a dispute with this customer whose mother had just been injured. We therefore decide that such evidence was properly rejected.

The court below also rejected an offer by plaintiff's counsel to prove by an expert witness that the steps were improperly constructed in that they failed to have an abrasive material in them or a safety tread and that terrazzo steps are slippery and dangerous when wet. Expert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming to possess special knowledge upon the subject: *Jacob v. Philadelphia,* 333 Pa. 584, 5 A. 2d 176; *Miller et al. v. Philadelphia,* 345 Pa. 1, 9, 25 A. 2d 185 (where this Court, speaking through Mr. Justice LINN, upheld the refusal of expert testimony of an architect regarding the unsafe maintenance and construction of a trail in Fairmont Park). Defendant was not required to use the best construction or material but only had the duty to supply a reasonably safe place: *Miller v. Philadelphia,* supra; *Copelan et ux. v. Stanley Company of America,* 142 Pa. Superior Ct. 603, 17 A. 2d 659.

Finally plaintiff contends that certain literature published by the National Safety Council regarding slippery floors and what should be done to terrazzo steps should have been admitted into evidence. These exhibits are subject to the same objection as the expert testimony.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The majority opinion says: "All that plaintiff's evidence established was that she slipped on steps that were slightly wet, apparently *because they had just been washed.*" (italics supplied) But as I view it, that is the whole crux of the case. The negligence lay in the very fact that the defendant's employe had washed down the steps and did not take the precautionary measures to rope off the stairs until they had dried, or to warn patrons of the slipperiness of the steps in their wet condition. We all know that in office buildings or in our own homes everyone is momentarily immobilized or urged to walk slowly and drag one's feet over tile, marble, stone or linoleum just washed.

The law is not unreasonable—or should not be. It only asks what is fair and just. It only charges one with what is foreseeable. The proprietor of a restaurant is engaged in business for a profit; he invites people to come in to his establishment to spend money. Is it unfair to expect that he should adopt reasonable precautions to prevent those patrons from injury? Suppose someone had dropped soup on the stairs? Can there be any question about the responsibility of the proprietor, (once he learned of the spilling actually or constructively,) to take the required measures to safeguard patrons from slipping on the spilled soup? And how does that responsibility differ if the slipperiness is caused by water or any other substance of which the defendant is aware?

In *Nettis v. General Tire Co.*, 317 Pa. 204, this court said: "All the authorities agree that it is incumbent upon the owner of premises upon which persons come by invitation, express or implied, to maintain such premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended."

In *Dalgleish v. Oppenheim, Collins & Co.*, 302 Pa. 88, 91, 152 A. 759, this Court also said: "It is, of course, a storekeeper's duty to use ordinary care to protect a customer from harm."

The majority opinion distinguishes the facts in the case of *Flora et ux. v. Great Atlantic & Pacific Tea Co.*, 330 Pa. 166, 198 A. 663, from the ones in the case at bar, but the principle is the same. There, the floor had been made slippery because of snow, water and slush tracked in by patrons. The defendant's employes mopped up the floor from time to time but did not do so for an hour and a half prior to the accident. The Supreme Court, affirming the verdict for the plaintiff said: "The floor of the store was covered with smooth linoleum which had, as one witness described it, 'a slippery disposition.' It is a matter open to common observation that many stores have floor coverings of rubber or other materials which are proof against slipping. It was shown that it was defendant's practice in bad weather to strew either an anti-slip compound or sawdust on the floor, to prevent slipping. This indicates that defendant was aware of a floor condition which might cause injury to its customers. That this condition could have been obviated by comparatively inexpensive attention is too clear to require argument. If a combination of a 'smooth linoleum' with water or snow produced a slippery condition at a place where invitees had occasion to walk, sometimes, as in the instant case, with packages in their arms or hands, it was defendant's duty to correct that condition."

I believe that the learned court below erred in rejecting the proffered expert testimony. Whether we wish to accept it or not, we are living in a specialized age and no one can possibly know all about the devices, equipment and paraphernalia we come into contact with every day of our lives. While steps, of course, are rather commonplace, there must be hundreds of differ-

ent materials from which they can be constructed, some of which are slippery under certain conditions and others which are not. The plaintiff offered to show that the steps in the defendant's restaurant were made of a material known as terrazzo. A pamphlet issued by the National Safety Council announced that: "Terrazzo, tile, marble, mosaic, and polished concrete floor surfaces are particularly hazardous when wet. The washing of such floors should be done at times when the traffic is light, preferably at night. If this is not practicable, the area being cleaned should be roped off until thoroughly dry."

Did the defendant observe these precautions, and if not, why not? Did the defendant use the care required to save harmless its customers? This was a question of fact to be decided by a jury, not a question of law to be categorically ruled on by the judge.

At the trial, plaintiff's counsel argued that, if, because of their composition and construction, the steps became slippery when wet, a duty devolved upon the defendant to install safety treads. The Court repelled this argument with the observation: "They don't have to have these metal safety treads; some steps have them, some don't have them. It doesn't charge the property owner with negligence because he hasn't got the latest devices; he doesn't have to keep on changing nor rebuilding the steps all the time."

A restaurateur, of course, is not required to go into the step-building business, but he cannot endanger life and limb of patrons out of a reluctance to meet hazardous conditions, especially when they can be met and conquered by the expenditures of a comparatively small sum. In *Strobel v. Park,* 292 Pa. 200, 140 A. 877, which involved an elevator accident, the defendant denied that he was required to install the latest safety devices. This Court said: "When a recognized standard of comparison (namely, other elevators) is present, it furnishes

the basis for concluding that defendant was negligent. An elevator owner must keep pace with science, art and modern improvements in appliances; his duty to his passengers is to provide and make use of the best and most approved machinery and devices in general practical use for the safety of passengers."

With what greater reason should the owner of a restaurant be required to expend a comparatively trifling amount in installing safety treads? Especially when the defendant used that protective device on the top step of each flight of the very stairway in dispute.

The Trial Judge said: "It is not negligence to wipe a floor down but here there is no evidence that this was done and there is no evidence how long the condition had existed." In reply to this, it is enough to say that we have positive evidence that the steps were wet and it does no violence to the law of cause and effect to assume that the floor was wiped down by employes of the defendant. Who else would do it? Common sense rules out that a total stranger would come into Horn and Hardarts and proceed to wipe down a whole flight of stairs. And since the wiping down operation could only have been performed by an employe, it follows that the defendant was charged with the negligence of its own servant or agent.

It is no startling innovation to declare that in a situation of this kind the plaintiff was entitled to have her case heard by the jury. In the case of *Loney v. Denenberg*, 166 Pa. Superior Ct. 378, 382, 71 A. 2d 842, the plaintiff was injured when she slipped on a floor which had been sprinkled with a cleaning compound. Recovery in the lower court was affirmed by the Superior Court on the theory that it was a question of fact for the jury to decide whether it was this cleaning compound which caused the plaintiff to slip: "Where, as here, there may be a reasonable difference of opinion as to whether appellants' negligence was the proxi-

mate cause of the injuries, the question of legal causation is for the jury." In the case at bar I see no reason why a jury should not have been permitted to decide whether the plaintiff's slipping on the floor was or was not the result of defendant's negligence.

In the case of *Drucker v. Moskowitz*, 119 Pa. Superior Ct. 377, 181 A. 367, the plaintiff entered a store to make a purchase. While her back was turned, an employe began to wash the tile flooring with soap and water. The plaintiff, in turning did not observe that the floor was wet, slipped and was injured. A verdict in her favor was affirmed by the Superior Court. The only difference between that case and the one at bar is that in that case, direct evidence was presented as to the washing of the floor, and here the washing had to be inferred from the circumstances, but the inference was a natural and logical one and, in the absence of refutation by the defendant, was unassailable.

Of course, the law does not lay down any doctrine that regardless of what happens to an invitee, he may recover against the proprietor for damages he may suffer, but it does support the proposition that reason, common sense and elemental justice require that a restaurateur in business for profit and who anticipates, as he may anticipate, that employes may drop leaves of spinach on the floor on which someone may fall, or may accidentally smash a bottle of milk and others be injured by flying glass, can reasonably anticipate that an employe of his may wash down steps and allow customers to use them before they are dry. These are situations that jurors are familiar with, and I do not understand a refusal to submit to a jury any situation resulting from the common denominator of everyday experience. If the Horn and Hardart Baking Company exercised every reasonable precaution, or if it should develop that the steps in question were not wet at all, the jury, under proper instructions from the

court, reinforced by argument from defendant's counsel, would so find, and the plaintiff would have failed to establish her case. But it does not comport with my idea of modern justice to say that the accident *could not have happened* in the manner described by the plaintiff's witnesses when there is no evidence that it could have happened in any other way, except the "evidence" of sheer hypothesis and guessing.

In entering the nonsuit against the plaintiff, the lower court said that before there can be a recovery in a case of this kind there "must be an obviously dangerous condition." But this observation slips on the wet steps of a faulty logic. For if the condition were obviously dangerous, the plaintiff could not possibly recover because she would then be charged with contributory negligence. It was the very latent and lurking quality of the slipperiness which lured the plaintiff to her injury and produced the responsibility of the defendant, since the instrumentality was under its exclusive control and within its immediate supervision.

I would remove the nonsuit with a procedendo.