J-A24025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KATHERINE M. & WILLIAM SELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WELLSBORO HOTEL COMPANY | : | No. 483 MDA 2018 |

Appeal from the Order Entered February 20, 2018
In the Court of Common Pleas of Tioga County Civil Division at No(s):
701 CV 2016

BEFORE:  OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:     **FILED: JANUARY 17, 2019**

Katherine M. and William Sell appeal from the order denying their motion for reconsideration of the order granting summary judgment in favor of Wellsboro Hotel Company ("Wellsboro"). For the reasons that follow, we affirm.

Wellsboro owns the Penn Wells Hotel and Lodge, which includes a Fitness Center of which the Sells are members. On September 24, 2015, Ms. Sell used the swimming pool and hot tub at the Fitness Center. Afterwards, she walked barefoot from the pool area down the tiled hallway toward the locker rooms. The hallway to the locker rooms connects to the lobby of the hotel, and is a common area used by both members of the Fitness Center and hotel guests. Ms. Sell slipped in water, fell, and fractured her right femur.

The Sells filed a complaint against Wellsboro on September 19, 2016, pleading claims of negligence and loss of consortium. Wellsboro filed an

answer and new matter, and attached a copy of the membership application and agreement ("Membership Agreement" or "Agreement") signed by the Sells. The second paragraph of the Agreement is titled "LIABILITY AND WAIVER OF LIABILITY," and states:

> It is expressly agreed that all exercises and use of the facilities shall be undertaken at member's own risk. The Penn Wells and mangers, officers and directors shall not be liable for any claims, demand, injuries, damages, actions or causes of action for personal injury or property damage incurred by member, member's family, or guests while on premises.

Membership Agreement at ¶ 2. We hereinafter refer to this paragraph as "the exculpatory clause."

The third paragraph of the Agreement is titled "RULES OF CONDUCT," and includes general rules, including:

> No wet bathing suits or wet towels are permitted in the exercise room or lobby area.
>
> . . .
>
> Because floors can be slippery, in consideration of other members and guests, please towel off after exiting the pool before entering the corridor to the locker room.
>
> Please be aware that the locker rooms are also the public restrooms for the lobby and breakfast area.

*Id.* at ¶ 3.

Wellsboro deposed the Sells during discovery. The Sells each testified during their depositions that they had read the Membership Agreement and signed it voluntarily. Ms. Sell testified that it was normal for the hallway to be wet. N.T. (Deposition of Katherine M. Sell), 1/11/17, at 51. She also stated

she had informed an employee of the slipperiness at some point before her injury. *Id.* at 52-54. Mr. Sell testified that he and Ms. Sell had previously discussed that the hallway to the locker room was slippery. N.T. (Deposition of William Sell), 1/11/17, at 13-14.

The Sells deposed Shawn Bryant, the CEO and corporate designee for Wellsboro. Bryant testified that the tile on which Ms. Sell slipped was laid in 2012. N.T. (Deposition of Shawn Bryant), 1/11/17, at 12. Part of the hallway was covered by a carpet placed there in order to absorb some of the water, but there was no carpet in the portion of the hallway in which Ms. Sell slipped. *Id.* at 15. Bryant denied that the purpose of the carpet was to prevent slippage. *Id.* at 16. He asserted that he was not aware of any other slips and falls that occurred inside the hotel. *Id.* at 29. Bryant also stated that after the accident, housekeeping began placing yellow caution signs in the hallway after it was mopped, or if there had been an increase in traffic from the pool area. *Id.* at 29, 31.

Ann Callihan, Amber Hull, and Elizabeth Gordon—other members of the fitness center—submitted statements in support of the Sells, each stating that the stone tiles in the area were always very wet and slippery, and that this was well known to the people who regularly used the pool and Fitness Center.

At the close of pleadings and discovery, Wellsboro filed a motion for summary judgment, arguing that the exculpatory clause relieved them of liability for the Sells' claim of negligence. The court held a hearing and granted the motion on November 14, 2017. The Sells filed a motion for

reconsideration. The court issued an order vacating the summary judgment and scheduling a hearing on the motion for reconsideration.[1] The court denied the motion for reconsideration on February 20, 2018, and the Sells appealed.[2]

The Sells raise the following issues:

> 1. Whether the lower court abused its discretion or committed an error of law in denying [the Sells]' Motion for Reconsideration, because the exculpatory clause at issue does not relieve [Wellsboro] from its own acts of negligence?
>
> 2. Whether the lower court abused its discretion or committed an error of law in denying [the Sells'] Motion for Reconsideration, because [Wellsboro]'s actions constitute "recklessness"?
>
> 3. Whether the lower court abused its discretion or committed an error of law in denying [the Sells'] Motion for Reconsideration, because the release refers to the fitness center and [Ms. Sell's] injuries occurred outside of the fitness center?

Sells' Br. at 4.

The entry of summary judgment is appropriate "where the record demonstrates that there remain no genuine issues of material fact, and . . .

---

[1] Before the court vacated summary judgment and scheduled the reconsideration hearing, the Sells filed a notice of appeal to this Court. After the court vacated summary judgment and scheduled the hearing, the appeal was stricken as premature pursuant to Pa.R.A.P. 1701(b)(3).

[2] Ordinarily, an appeal may not lie from an order denying a motion for reconsideration. *See Oliver v. Irvello*, 165 A.3d 981, 983 n.1 (Pa.Super. 2017). Here, however, the trial court *de facto* granted the motion for reconsideration when it vacated summary judgment and scheduled a reconsideration hearing. This action tolled the appeal period until the court's disposition. *See* Pa.R.A.P. 1701(b)(3), and note 1, *supra*. Therefore while the court's February 20, 2018 order purportedly denies reconsideration, it is more aptly construed as an order reinstating summary judgment in favor of Wellsboro. Thus, it was final and appealable.

the moving party is entitled to judgment as a matter of law." ***Chepkevich v. Hidden Valley Resort, L.P.***, 2 A.3d 1174, 1182 (Pa. 2010). As review of summary judgment presents a question of law, our standard of review is *de novo* and the scope of review is plenary. ***Id.***

### I. The Exculpatory Clause

The Sells argue that the exculpatory clause in the Membership Agreement does not absolve Wellsboro from its negligence in this case. The Sells contend that the clause does not apply to an injury caused by slipping *en route* to the locker room, as this activity was ancillary to the fitness activities contemplated by the Membership Agreement. Sells' Br. at 13-19 (citing, *inter alia*, ***Brown v. Racquetball Centers, Inc.***, 534 A.2d 842 (Pa.Super. 1987)). The Sells also argue that we should not interpret the exculpatory clause as releasing Wellsboro from liability for its own negligent acts, as it does not specifically mention either negligence or negligence by Wellsboro. Sells' Reply Br. at 13-17 (citing ***Dilks v. Flohr Chevrolet, Inc.***, 192 A.2d 682 (Pa. 1963)).

An otherwise valid exculpatory clause[3] is unenforceable "unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence." ***Chepkevich***, 2 A.3d at 1189 (quoting ***Topp Copy Prod., Inc. v. Singletary***, 626 A.2d 98, 99 (Pa. 1993)). In interpreting

---

[3] The Sells do not argue that the clause contravenes public policy, is not between private entities governing their own affairs, or is a contract of adhesion. ***See Chepkevich***, 2 A.3d at 1189 (listing preliminary requirements for a valid exculpatory clause).

whether a liability waiver meets this standard, we construe the language strictly and, when ambiguous, "against the party seeking immunity from liability." *Id.* The clause "must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties." *Id.*

In *Brown*, the plaintiff signed a membership application with a racquetball club, stating that he assumed "all risks of injury to [his] person and property that may be sustained **in connection with the stated and associated activities** in and about [the] premises" and that he released the club from "all claims . . . for injury sustained to [his] person and/or property during [his] presence on the premises and my participation in those activities due to negligence or any other fault." 534 A.2d at 843 (emphasis added). We held that the release did not bar a claim by the plaintiff based on injuries he sustained when he exited the shower facilities and slipped on the wet tile floor. *Id.* at 843-44. We came to this conclusion because the release only relieved the defendant of liability for injuries the plaintiff sustained "while participating in certain activities of the [c]lub," which did not include use of the shower facilities. *Id.* at 833.

Here, unlike in *Brown*, the language of the exculpatory clause does not limit the waiver of liability to the certain activities. Rather, it unambiguously states that the members assume risk of "all exercises **and use of the facilities**" and that Wellsboro is not liable for "any claims [or] injuries" sustained by members "**while on [the] premises**." Membership Agreement

at ¶ 2 (emphasis added). The language therefore applies to the Sells' negligence claim, which arose from Ms. Sell's use of the facilities while on the premises. Moreover, other language in the contract warns that guests who exit the pool must dry off "before entering the corridor to the locker room," "[b]ecause floors can be slippery." *Id.* at ¶ 3. Therefore, in addition to the broad language employed in the exculpatory clause applying it to any activity on the premises, the Agreement as a whole explicitly contemplated the activity at issue here: walking in the wet corridor to the locker room after using the pool. As the activity which caused Ms. Sell's injuries was contemplated by the contract, the Sells' argument that the exculpatory clause does not apply to her claim is meritless.[4]

We are equally unpersuaded by the Sells' argument that the exculpatory clause was not intended to bar claims arising from Wellsboro's negligence. An exculpatory clause need not specifically mention "negligence" in order to bar negligence suits. *Chepkevich*, 2 A.3d at 1192-93. For example, our Supreme Court has acknowledged that language providing a party is not liable "for any injury" to the other is an explicit statement releasing the party from negligence claims. *Id.* at 1193 & n.21 (discussing *Nissley v. Candytown Motorcycle Club Inc.*, 913 A.2d 887 (Pa.Super. 2006)); *see also Zimmer v. Mitchell and Ness*, 385 A.2d 437, 439-40 (Pa.Super. 1978) (holding

---

[4] We shall not discuss the cases cited by the Sells on this point which are not controlling authority, but note that we found none of them persuasive to our disposition.

common sense interpretation of exculpatory clause not containing word "negligence" but releasing defendant of "any liability" was not ambiguous and included negligence claims), *aff'd*, 416 A.2d 1010 (Pa. 1980)). Here, the Agreement stated that Wellsboro would "not be liable for **any** claims, demand, injuries, damages, actions, or causes of action for personal injury or property damage incurred by member . . . ." Membership Agreement at ¶ 2 (emphasis added). This obviously included a bar against suits arising from Wellsboro's own negligence.[5]

## II. The Recklessness Claim

In their second issue, the Sells argue that the court erred in granting summary judgment for Wellsboro because Ms. Sell's injuries were caused by Wellsboro's recklessness, which was not waived by the exculpatory clause. According to the Sells, Wellsboro owed a duty to Ms. Sell, as a business invitee, to "protect [her] from foreseeable harm," meaning circumstances that Wellsboro either knew of or would have discovered through the exercise of reasonable care, and which created an unreasonable risk of harm. Sells' Br.

---

[5] ***Dilks*** is inapposite. In that case, the Supreme Court was charged with constructing a contract stating that the defendant, Chevrolet, was to keep the premises it was leasing from the plaintiff in good order and repair, but that it assumed no liability for "reasonable wear and tear and damage by accidental fire or other casualty not occurring through the negligence of [Chevrolet]." ***Dilks***, 192 A.2d at 429 (brackets in original). The Court examined the use of the word "or," and held that the release did not clearly bar the claim of damage following a fire caused by the negligence of Chevrolet. ***Id.*** at 436. Here, the wording of the exculpatory clause is not so ambiguous, and we are not faced with interpreting whether it only barred actions negligence actions arising from certain enumerated injuries.

at 23-24 (citing **Estate of Swift**, 690 A.2d 710 (Pa.Super. 1997)). The Sells also posit that Section 343 of Restatement (Second) of Torts (1965), employed in **Toro v. Fitness Int'l LLC.**, 150 A.3d 968 (Pa.Super. 2016), requires a plaintiff to prove that the defendant either helped create the harmful condition, or had actual or constructive notice of the condition. Sells' Br. at 24. The Sells argue that, unlike the plaintiff in **Toro**, who slipped in soapy water on the floor of an exercise gym, they set forth evidence that Wellsboro knew that the floor was dangerously slippery, and therefore the question of whether the evidence proved that Wellsboro was reckless should have been decided by a fact-finder.

 **Toro** and **Swift** explained the duty owed to invitees and a breach of that duty within the context of a negligence claim. **See Toro**, 150 A.3d at 977; **Swift**, 690 A.2d at 722. The instant claim is appropriately analyzed under the definition of "reckless disregard" from Section 500 of Restatement (Second) of Torts (1965). **See Hinkal v. Pardoe**, 133 A.3d 738, 746 (Pa.Super. 2016) (citing **Tayar v. Camelback Ski Corp., Inc.**, 47 A.3d 1190 (Pa. 2012)). Section 500 states:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts § 500 (1965).

In other words, whereas negligence consists of "mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency," recklessness requires "a conscious choice of a course of action," and must "involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence." *Id.* at cmt. a, g. The general examples of reckless conduct given by the comment to the section include driving through heavy traffic at a high rate of speed; rendering imperfect surgical aid when professional assistance is available; and intentionally driving through a highway in defiance of a stop sign if a stream of vehicles is approaching. *Id.* at cmt. a, b.

Here, the Sells allege that Wellsboro knew that water was being constantly deposited on the tile floor outside of the women's locker room, and that this created a slippery condition. However, as a matter of law, these facts sustain a claim of negligence, not recklessness. As the trial court stated, "no reasonable jury could find [Wellsboro] intentionally failed to dry the floor not only having reason to know it created an unreasonable risk of harm to [Ms. Sell] but also that such risk is greater than that which would make its conduct negligent." Trial Court Opinion, filed May 8, 2016, at 6-7. We agree. The Sells focus on whether Wellsboro had notice that the floor was slippery when wet, and fail to acknowledge that the circumstances here do not involve "an easily perceptible danger of substantial physical harm" with a substantially greater

probability of occurring than that of negligence. The courts of our Commonwealth have consistently analyzed slip-and-fall claims such as this one within the parameters of a negligence action.[6] While we do not imply that a slip and fall case can never prevail under a theory of recklessness, the facts here do not meet the standard for recklessness. This issue merits no relief.

## III. The Hallway

In their final issue, the Sells argue that because the exculpatory clause should be construed narrowly, and against Wellsboro, **see** Section I, *supra*, it should not be construed to apply to the hallway where the injury occurred, as this was not part of the facilities belonging to the Fitness Center. According to the Sells, the Membership Agreement refers to the Fitness Center facilities as the exercise room and the swimming pool, and specifies that the hallway and

_____

[6] **See, e.g. Katz v. John Wanamaker Philadelphia, Inc.**, 112 A.2d 65, 68 (Pa. 1955) (holding whether slip and fall on wet, slippery marble staircase was negligence was question for jury); **Sheridan v. Horn & Hardart Baking Co.**, 77 A.2d 362, 362 (Pa. 1951) (finding defendant had no notice of the conditions and plaintiff was contributorily negligent in negligence claim for slip and fall in wet, slushy revolving door of restaurant); **Flora v. Great Atl. & Pac. Tea Co.**, 198 A. 663, 665 (Pa. 1938) (holding store owner negligent for failing to dry wet, slippery linoleum floor in slip-and-fall case); **Toro**, 150 A.3d at 977-78 (finding plaintiff could not prevail on slip and fall in men's locker room of exercise club where plaintiff put forth no evidence of notice); **Rodriguez v. Kravco Simon Co.**, 111 A.3d 1191, 1194 (Pa.Super. 2015) (determining plaintiff in slip and fall case failed to prove defendant shopping mall was negligent); **Estate of Swift v. Ne. Hosp. of Philadelphia**, 690 A.2d 719, 722-23 (Pa.Super. 1997) (examining negligence claim based on slip and fall on wet bathroom floor).

locker room, in contrast, are common areas for public use. Therefore, the hallway is not encompassed by the exculpatory clause.[7]

The exculpatory clause relieves Wellsboro from negligence claims arising from injuries sustained by members both during "use of the facilities" and "while on [the] premises." Membership Agreement at ¶ 2. Neither the "facilities" or "premises" are specifically defined by the Agreement, but the rules listed in the Agreement indicate that Fitness Center membership allows for use of the "pool," "pool area," "pool facilities," "exercise room," "exercise rooms," "cardio and weight room," "lobby area," "**corridor to the locker room**," and "locker rooms." *Id.* at ¶ 3 (emphasis added). Thus, we conclude that the corridor to the locker room, where Ms. Sell was injured, is included in the "facilities" and "premises" of the Fitness Center for purposes of the Membership Agreement. The Sells advance no colorable reason why the corridor cannot be considered both a part of the Fitness Center for which they have waived Wellsboro's liability, and an area open to the public.

Having found no reason to vacate summary judgment, we affirm.

Order affirmed.

_____

[7] As the facts of this case do not necessitate we determine whether the entirety of the hotel is included in the "premises" of the Fitness Center, we do not address the Sells' argument on this point.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>01/17/2019</u>